## Drinkard et al. v. George et al.

(Decided December 16, 1930.)

(As Modified on Denial of Rehearing March 27, 1931.)

WILSON & WILSON and DURFEE & HOLMES for appellants.

CHARLES FERGUSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On March 18, 1926, H. N. Lewis executed and delivered to T. M. George his promissory note for $4,000, payable twelve months after date, with interest at the rate of 8 per cent. per annum, and secured same by a mortgage on a tract of land in Livingston county. This action was brought to recover on the note and enforce the mortgage lien, not only for the debt, but for $226.30, taxes paid by George, together with interest and the

penalty thereon. Frances Lewis Drinkard, who held the second mortgage on the property, was made a party defendant. She appeared by her husband and by C. H. Wilson as next friend, and filed an answer, counterclaim, set-off, and cross-petition, admitting the validity of George's mortgage to the extent of $2,000, and attacking the remainder of the indebtedness on the ground that H. N. Lewis was her guardian, that the property mortgaged was impressed with a trust in her favor, and was in fact her property, and that George had notice of that fact. On final hearing, the court upheld the mortgage in full and the claim for taxes, and adjudged George a prior lien therefor, and ordered the master commissioner to sell the land. At the same time the title to the land was adjudged to be in Mrs. Drinkard, and she was given the right to pay George's debt and avoid the sale. From that judgment this appeal is prosecuted.

On November 13, 1911, Brice N. Lewis died testate, a resident of the state of Illinois, survived by two sons, one of whom is H. N. Lewis, and a daughter, Frances Kennedy Lewis, who subsequently married B. B. Drinkard. Brice N. Lewis devised his property to his widow and three children. The will was probated in Illinois, and Frank D. Thomas was appointed guardian of Frances Lewis Drinkard, then and now an infant. Afterwards the Lewis family moved to Livingston county, Ky., and by proper orders of the Livingston county court H. N. Lewis, the brother of Frances, was appointed and qualified as her guardian with his mother, Fannie K. Lewis, as the sole surety on his bond. Of the money that came into his hands, H. N. Lewis, the guardian, loaned to his mother the sum of $9,324.29, and took from her five promissory notes aggregating that sum, dated April 1, 1923, payable on demand, and on May 9, 1924, Mrs. Lewis secured the notes by a mortgage on land which she then owned. This mortgage, which was duly recorded in the Livingston county clerk's office, recited: "That whereas the said Mrs. Fannie K. Lewis is indebted to the said H. N. Lewis in the sum of $9,324.29, as evidenced by five several promissory notes dated April 1, 1923, and executed to H. N. Lewis as guardian for Frances Kennedy Lewis, as follows." The notes so secured were indorsed by H. N. Lewis and delivered to his ward, Frances Lewis Drinkard. On January 11, 1926, Mrs. Fannie K. Lewis conveyed the same land to H. N. Lewis "in considera-

tion of the sum of $1.00 (cash in hand paid) and the love and affection of a mother to her son.''

In the early part of March, 1926, B. B. Drinkard, the husband of Frances Lewis Drinkard, applied to Mr. George, who was president of the Salem Bank, for a loan of $2,000, and agreed to give as collateral the lien notes aggregating several thousand dollars on the Fannie K. Lewis farm. Drinkard executed his note, was furnished a pass book, and left, agreeing to forward the lien notes, which he subsequently did. After he left, it was suggested that the title to the Lewis farm had better be examined. Mr. Ferguson, the attorney for the bank, was called, and, after looking at the records, reported that Mrs. Lewis had conveyed the land to H. N. Lewis. As Mrs. Lewis then owed the bank about $2,000, and by the conveyance had disposed of all of her property, the officers of the bank became suspicious about the transaction, and either telephoned Lewis directly, or through B. B. Drinkard, to come over and fix the matter up. When Lewis appeared, they explained to him the situation and told him that, unless his mother's indebtedness to the bank was secured, they would have to file suit immediately. Lewis explained that he was there to help out the boy (meaning B. B. Drinkard), and, after some discussion, agreed to protect the bank. The transaction was finally consummated by the execution of the $4,000 note and mortgage for the collection and enforcement of which this action was brought. Of the consideration, $2,000 was used to discharge the indebtedness of Mrs. Fannie K. Lewis to the Salem Bank. The remaining $2,000 was placed to the credit of B. B. Drinkard, who checked it out and used it for the benefit of his wife, Frances Lewis Drinkard. The next day H. N. Lewis executed to his ward, Frances Lewis Drinkard, a second mortgage, to secure the sum of $10,877.53, which, subject to certain credits not appearing, was the amount that he owed his ward and that Fannie K. Lewis owed him as guardian. The execution of these mortgages was without the knowledge or acquiescence of Mrs. Drinkard or her husband. Both Mr. George and Mr. Quertermous, who was assisting in the transaction, say that the lien notes tendered by B. B. Drinkard as collateral, were not made to H. N. Lewis as guardian, and that neither of them knew at the time of the transaction that H. N. Lewis was the guardian of Frances Lewis Drinkard.

We do not find in the record any basis for the charge of fraud and collusion on the part of Mr. George, Mr. Quertermous, and H. N. Lewis, the guardian, or any evidence tending to show that Mr. George or Mr. Quertermous had actual knowledge of the fact that H. N. Lewis was the guardian of Frances Lewis Drinkard. However, there are other facts that must not be overlooked. The notes which B. B. Drinkard offered Mr. George as collateral for the original loan were the very notes executed by Fannie K. Lewis to H. N. Lewis and secured by the mortgage of May 9, 1924, which had been duly recorded. The attorney was directed to examine the title. His examination revealed the subsequent deed made by the mortgagor to the mortgagee. In taking the mortgage from H. N. Lewis, not only was Mr. George charged with notice of what the record showed, but the knowledge of his attorney, who examined the record, was imputable to him. Thus he had constructive knowledge of the fact that the mortgage of May 9, 1924, was given to secure notes which had been executed by the mortgagor to H. N. Lewis as guardian, and that the property mortgaged was subsequently conveyed to H. N. Lewis as an individual. The notes secured by the mortgage, or some of them, had been delivered by H. N. Lewis to Mrs. Drinkard, or her husband, and this fact was known to Mr. George. Though the mortgage was not assigned of record, it was in effect a mortgage to Mrs. Drinkard, and the transfer of the notes operated as an equitable assignment of the mortgage. Miles v. Gray, 4 B. Mon. 417; Burdett v. Clay, 8 B. Mon. 287; Batesville Institute v. Kauffman, 85 U. S. (18 Wall.) 151, 21 L. Ed. 775. In the circumstances, the mortgage was not merged in the deed so as to defeat the intervening equity of Mrs. Drinkard, of which George had knowledge, Brown v. Blydenburgh, 7 N. Y. 141, 57 Am. Dec. 506; Pratt v. Bank of Bennington, 10 Vt. 293, 33 Am. Dec. 201; and he does not occupy the position of an innocent purchaser for value. On the contrary, whatever title H. N. Lewis acquired by the deed from Fannie K. Lewis, and whatever lien George acquired by his mortgage from H. N. Lewis, in so far as the $2,000 in controversy is concerned, is subject and inferior to Mrs. Drinkard's lien to the extent of the indebtedness represented by the notes of Fannie K. Lewis, and such should have been the judgment of the court.

But the point is made that by the transaction in question the bank lost its right to set aside the deed from

Mrs. Lewis to H. N. Lewis, and it is inequitable to permit Mrs. Drinkard to attack the transaction. The answer to this is that Mrs. Drinkard had nothing to do with the transaction, and even if suit had been brought, and the deed had been set aside, the bank would have been in no better position, as its claim would have still been inferior and subject to the mortgage of May 9, 1924, which Mrs. Lewis had executed to H. N. Lewis as guardian.

It is also insisted that Mrs. Drinkard must either affirm or repudiate the transaction as a whole, and may not affirm part and repudiate part. It must not be overlooked that Mrs. Drinkard, who was and still is an infant, was not a party to the transaction, and is not seeking to repudiate the transaction as such. She had applied for a loan of $2,000 to be secured by the lien notes on the land. The loan was not made in the manner intended. By reason of the mortgage complained of she received the $2,000. The effect was the same as if the loan had been secured by the collateral notes. Having received the money, she, though not a party to the transaction, is willing to do the fair thing and let the transaction stand to the extent of the money received.

There is the further contention that Mrs. Drinkard could not defend or prosecute the cross-petition by next friend. The facts are these: Mrs. Drinkard was made a party defendant. The petition alleged that she held a second mortgage on the land and asked that she be required to answer and set up her claim. She being a nonresident, the petition contained an affidavit for a warning order, warning order was made, and C. H. Wilson, a regular practicing attorney of the court, was appointed corresponding attorney. Thereafter C. H. Wilson filed his report stating that Frances Lewis Drinkard was an infant under the age of 21 years, that her husband's name was B. B. Drinkard, that he had examined the file of the case and believed that Mrs. Drinkard had a good and valid defense, that he had been authorized to represent her as next friend, and had prepared an answer, counterclaim, set-off, and cross-petition, in which her husband had joined. At the same time he filed the requisite affidavit showing that he was qualified to act as next friend, and alleging that Mrs. Drinkard, who was an infant, had no guardian, curator or committee, residing in this state. He then filed, as next friend, the answer, counterclaim, set-off, and cross-petition. George

moved to strike all the allegations concerning the next friend. The motion was overruled. Married women are specially excepted from the provisions of sections 35 and 36, Civil Code of Practice, regulating actions by and against persons under disability. Except in certain cases not here material, it was formerly necessary in actions by or against a wife that her husband be joined as plaintiff or defendant. Chapter 55, Acts 1892. Now a married woman may sue and be sued as a single woman. Section 2128, Kentucky Statutes. Under that statute it has been held that an infant married woman can prosecute in her own name an action against her husband for alimony or divorce. Snedager v. Kincaid, 60 S. W. 522, 22 Ky. Law Rep. 1347. Whether, in other actions, an infant married woman may sue or be sued alone, we deem it unnecessary to decide. Certainly she can sue or be sued when her husband is joined as a party. The pleading filed on behalf of Mrs. Drinkard was not merely defensive, but was a cross-petition in which she sought affirmative relief. In the circumstances it was equivalent to an original action. The husband consented to the appointment of the next friend, and to the bringing of the action, and even though the next friend was an unnecessary party, appellant was in no wise prejudiced by the court's failure to so hold.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.