**Frederic E. MICHELS, Movant,**

v.

**John P. SKLAVOS, Respondent.**

**No. 93–SC–126–DG.**

Supreme Court of Kentucky.

Jan. 31, 1994.

Edward H. Stopher, Martin H. Kinney, Jr., Boehl, Stopher, Graves & Deindoerfer, Louisville, for movant.

Benjamin J. Lookofsky, Mayfield, for respondent.

LEIBSON, Justice.

John P. Sklavos was discharged from his employment as a maintenance manager for the Pennwalt Corporation on September 24, 1987. Attorneys Frederic E. Michels and Nicholas W. Carlin filed a wrongful discharge suit on his behalf against Pennwalt in McCracken Circuit Court, which was later transferred on Pennwalt's motion to the United States District Court for the Western District of Kentucky. While the suit was

pending in Federal Court, on September 27, 1988, Sklavos discharged Michels and Carlin as his counsel, and employed Benjamin J. Lookofsky, his present attorney, to represent his interests and pursue the action.

After Lookofsky was employed, Pennwalt filed a motion for summary judgment which was sustained on September 14, 1989. The order was accompanied by a Memorandum Opinion stating the reason for dismissing the case against Pennwalt was because Sklavos had failed to "first pursue" administrative remedies available to him with the Kentucky Human Rights Commission (KHRC), or with the Secretary of Labor under the Occupational Safety and Health Act (OSHA). The final order entered in Federal Court stated the summary judgment was granted "without prejudice as to [Sklavos'] administrative claims."

Sklavos, represented by Lookofsky, then filed the present action on March 23, 1990 in Jefferson Circuit Court, against attorneys Michels and Carlin, alleging it was their negligence "in failing to institute actions before the proper regulatory agencies" which caused his otherwise valid claim for wrongful discharge to be dismissed in Federal Court. Whether the claim is in fact otherwise valid has yet to be determined. It is the so-called "case within the case" in the present malpractice action.

Attorneys Michels and Carlin responded to the malpractice claim made against them with a statute of limitations defense, asserting the claim against them was barred by KRS 413.245, which provides in pertinent part:

"... a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured."

The trial court sustained their motion for summary judgment stating the following reasons:

"The Plaintiff in the case at the bar knew or should have known of any alleged wrong at the time he retained new counsel [Lookofsky], approximately one and one-half years before the filing of this suit. Plaintiff's new counsel knew or should have known of any alleged negligence immediately upon taking over the case and should have filed his malpractice action at that time. The Plaintiff ... is time barred by the applicable one year statute of limitations."

Upon appeal, the Court of Appeals reversed and remanded, stating grounds which appear, at least superficially, somewhat conflicting. First the Opinion states:

"The first point at which he [Sklavos] can be held to have actual or constructive knowledge of the alleged mishandling of his claim is when the action was dismissed. Because a legal malpractice action cannot be based on damages which are merely speculative, *Northwestern National Ins. Co. v. Osborne*, 573 F.Supp. 1045 (E.D.Ky. 1983), aff'd, 787 F.2d 592 (6th Cir.1986), Sklavos could not have prevailed against Carlin and Michels prior to the dismissal of his action against Penwalt (sic.)."

"[W]e now hold that where applicable, the statute of limitations in a legal malpractice action shall commence upon the termination of the proceeding on which the malpractice action is based."

The Opinion then shifts gears, stating:

"The limitations period shall commence prior to this time only where there is clear evidence that the plaintiff knew or should have known of the alleged wrong. For example, had Lookofsky advised Sklavos of the alleged malpractice prior to the termination of the action in Federal Court, the statute of limitations would have begun to run at that time. This rule in no way alters KRS 413.245, but rather establishes a rebuttable presumption that a plaintiff is not aware of possible legal malpractice until the termination of the action."

Thus the Court of Appeals has stated at one place that the cause of action for legal malpractice cannot begin to run until "the termination of the proceeding upon which the malpractice action is based," because until

then "damages ... are merely speculative." But the Court of Appeals has also said, notwithstanding, if the proof shows that "Lookofsky advised Sklavos of the alleged malpractice prior to the termination of the action in Federal Court, the statute of limitations would have begun to run at that time."

In this somewhat confused state of affairs, we have granted discretionary review. We affirm the results, reversing the summary judgment and remanding the case for further proceedings. But for reasons to be stated, we conclude that when Sklavos "knew or should have known of the alleged wrong" is irrelevant to the statute of limitations issue. The statute of limitations does not apply as a matter of law in present circumstances.

The statute of limitations in KRS 413.245 is actually two separate statutes of limitations: one, a statute limiting to "one year from the date of occurrence," and then a second statute providing a limit of "one year ... from the date when the cause of action was, or reasonably should have been, discovered by the party injured," if that date is later in time. The threshold question is what does the statute mean in part one by "the date of the occurrence"? If the suit was filed within one year of the "date of occurrence," we need not concern ourselves with the meaning and application of the discovery rule. The statute itself provides some insight because in it the term "cause of action" is used synonymously with "occurrence" when describing the discovery rule in the alternative phrase. As properly explained by Judge Bertelsman in *Northwestern Nat. Ins. Co. v. Osborne*, 610 F.Supp. 126, 128 (D.C.Ky.1985):

> "[A] cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred, subject in certain kinds of actions to the additional requirement of discovery of the claim by the plaintiff.... [T]he use of the word 'occurrence' in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute."

As Judge Bertelsman explains, this is the date of "irrevocable non-speculative injury." *Id.*

Where, as in the present case, the cause of action is for "litigation" negligence, meaning the attorney's negligence in the preparation and presentation of a litigated claim resulting in the failure of an otherwise valid claim, whether the attorney's negligence has caused injury necessarily must await the final outcome of the underlying case. This is the message and the meaning of *Hibbard v. Taylor*, Ky., 837 S.W.2d 500, 501 (1992):

> "It is equally obvious to Taylor that his 'cause of action' cannot have been discovered before it accrued, that it could not accrue until he was in fact injured as a proximate result of the malpractice, and thus his injury was merely speculative until the finality of the appeal."

Thus the Court of Appeals properly recognized in the present case that until the Federal District Court dismissed the action against Pennwalt, even if Michels and Carlin were negligent in failing to first pursue an administrative remedy in the underlying claim, whether their nonaction caused damages was "merely speculative." As their Opinion states, "the statute of limitations in a legal malpractice action [of this nature] shall commence upon the termination of the proceeding on which the malpractice action is based."

Where litigation negligence is charged, to construe KRS 413.245 to require the filing of a malpractice claim before finality in the determination of the underlying claim, would be to construe the statute as a statute of repose rather than a statute of limitations. A statute of repose "does not function as a statute of limitations, but only to cut off claims which have not accrued within [the stated] period." *Tabler v. Wallace*, Ky., 704 S.W.2d 179, 184 (1986). As described in *Tabler* (quoting Judge Jerome Frank in *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir.1952)), so interpreted, a statute "functions as a one-way ticket to 'Topsy–Turvy Land' ... where you 'die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or

burn down a house never built, or miss a train running on a nonexistent railroad.'" *Id.*

Unfortunately, when the Court of Appeals' opinion goes on to address concepts related to the discovery rule, it addresses questions unnecessary in deciding the statute of limitations issue in this case. It opines that, if "Lookofsky advised Sklavos of the alleged malpractice [of Michels and Carlin] prior to the termination of the action in Federal Court, the statute of limitations would have begun to run at that time." This is surplusage in present circumstances, and only confuses the matter. Further, the Court of Appeals then remanded the present case for a factual determination in this regard, which serves no purpose because the statute of limitations did not commence running in any event against Sklavos' malpractice claim until the finality date of the underlying litigation in Federal District Court.

In seeking discretionary review Michels' counsel[1] insists that the Court of Appeals should have imputed any knowledge Attorney Lookofsky had about negligence of prior counsel to his client Sklavos. As a general rule knowledge of the agent is knowledge to the principal. But even if Lookofsky, when employed, believed Michels and Carlin should have first pursued an administrative claim, and even if Lookofsky so advised Sklavos at the time, at this point in the litigation (where Lookofsky replaced Carlin and Michels) no cause of action yet existed against prior counsel because damages, if any, were as yet inchoate and speculative. Damages were contingent upon whether Pennwalt would interpose the lack of an administrative claim as an affirmative defense to the wrongful discharge case, and upon whether the United States District Court would rule in favor of Pennwalt if such a defense was presented.

There are many different affirmative defenses available in a lawsuit: statute of limitations, statute of frauds, waiver, estoppel, illegality of the transaction, and contributory negligence, to name but a few. The mere fact that a potentially successful defense exists, including one created by the prior attorney's negligence in the preparation or presentation of his client's case, does not finally determine the outcome of the underlying case. The fatal defense may never be presented, or if presented it may be procedurally defective. Indeed, even if timely presented, ultimately the court may fail to recognize an otherwise valid defense so that it never affects the outcome of the underlying case.

The Court of Appeals erred insofar as it directed that the statute of limitations issue presented a factual issue which should turn upon whether Lookofsky advised his client, Sklavos, that his previous attorneys, Michels and Carlin, were negligent in failing to pursue an administrative remedy. Such knowledge would have been meaningless, whether possessed by Lookofsky or Sklavos, or both, until the final adverse determination of the underlying claim. Until then no damages flowed from such negligence, if any there was.

Thus, the argument so vehemently presented in our Court on behalf of Michels, that any knowledge of attorneys' negligence possessed by Lookofsky should be imputed to Sklavos, is irrelevant. Michels has cited *Kentucky–Virginia Stages, Inc. v. Tackett,* 298 Ky. 78, 182 S.W.2d 226 (1944), *Drinkard v. George,* 237 Ky. 560, 36 S.W.2d 56 (1930), and other cases, holding that notice to or knowledge of an attorney about any matter involved in pending litigation is imputed to the client. These authorities are not pertinent in present circumstances because knowledge of Carlin and Michels' negligence, if any, would not trigger the running of the statute of limitations in any event until the cause of action accrued. Michels contends that the statute of limitations for a legal malpractice action begins to run on the date when the party knew or should have known that he has been wronged, which is true if the cause of action has accrued and the issue is whether the discovery rule applies, but not pertinent here because a "wrong" requires both a negligent act and resulting injury. *Damnum absque injuria,* harm without injury, does not give rise to an action for damages against the person causing it. A lawsuit filed against Michels and Carlin before the

---

1. Carlin did not seek discretionary review.

underlying case against Pennwalt was dismissed would have been properly dismissed because no injury had yet occurred.

Because this case is being remanded for further proceedings, before leaving this subject we take note that, although knowledge on the part of Lookofsky or Sklavos, or both, that Carlin and Michels had negligently failed to file an administrative claim does not affect the running of the statute of limitations, such knowledge could affect other issues in this case. Part of Michels' argument is that, when employed, Lookofsky "inherited the alleged duty to pursue an administrative claim on behalf of" Sklavos, and, if Michels and Carlin were negligent, Lookofsky's further negligence (later in time) was an intervening cause.

Lookofsky stated at oral argument that immediately after he was employed he checked with OSHA, with KHRC, and with another state agency as to whether he could seek an administrative remedy, and was told in each instance that it was too late; that he was told the claim before the administrative agency must be filed within a reasonable time, and a reasonable time is 30–60 days after the employee is terminated. He stated that in these circumstances he chose not to pursue an administrative remedy. If it was indeed too late, as he claims, this forecloses the issue of his negligence.

However, if Michels and Carlin can prove Lookofsky was also negligent in failing to file an administrative claim, the negligence of a second attorney would not relieve the first attorneys who were also negligent from the consequences of their wrongdoing. It does not qualify as an intervening cause because it is simply one of the "collective ... causes for which it ['the law'] lays responsibility." *House v. Kellerman,* Ky., 519 S.W.2d 380, 382 (1975). It would not be an intervening or superseding cause because it is not (for Michels and Carlin) a new cause of an "extraordinary or unforeseeable" nature "overriding and eliminating the legal significance of ... antecedent causation." *Id.* at 383. The question of the additional responsibility of Lookofsky, if any, while it does not raise the specter of the statute of limitations, con-

ceivably may raise a question of contribution or indemnity.

Further, since this case is remanded for further proceedings, we must emphasize that nothing we have stated thus far in this Opinion should be interpreted to suggest that a case of negligence has yet been proved against Michels and Carlin. They assert the Federal District Court judge erred when he held there were statutes requiring Sklavos first to pursue an administrative remedy. Further, they argue that Lookofsky was to blame for failing to adequately defend the motion for summary judgment asserting this defense. These issues, as well as the merits of the underlying claim against Pennwalt for wrongful discharge (the case within this case) have yet to be proved. Both negligence on the part of Carlin and Michels and resultant injury have yet to be proved in this case, and nothing in this Opinion is intended to suggest otherwise. As stated in *Holton v. Pfingst,* Ky.App., 534 S.W.2d 786 (1975), the professional is not liable "for an honest mistake in judgment when he follows acceptable medical standards for examination, treatment and diagnosis."

The "discovery rule" appended to the statute of limitations found in KRS 413.245 is merely a codification of the common law principle stated by this Court in *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166 (1970), as elaborated upon in *Louisville Trust Co. v. Johns–Manville Products,* Ky., 580 S.W.2d 497 (1979). It presumes that a cause of action has accrued, i.e., both negligence *and* damages has occurred, but that it has accrued in circumstances where the cause of action is not reasonably discoverable, and it tolls the running of the statute of limitations until the claimant knows, or reasonably should know, that injury has occurred. *Hibbard v. Taylor, supra,* opined that we would not "fault [the client] for relying upon [his attorney's] professional judgment within the continuing attorney-client relationship"; that we should not "charge a layman with knowledge that legal malpractice has occurred, when trained counsel [his attorney] insists that the fault lay with the trial court, and that the result may well be reversed." Tolling the statute of limitations during the continuing represen-

tation of the negligent attorney is a sound rule so long as the attorney fails to advise his client of the problem. Also, it is sound to assume that the client has not been so advised so long as he continues to be represented by the negligent attorney. These two principles addressed here by the Court of Appeals are sound, but if applying the discovery rule were the critical issue, they would still not be controlling. Here Sklavos changed attorneys more than one year before the present action commenced. The outcome of the present case turns neither upon the continuing representation rule, nor upon the discovery portion of KRS 413.245, but upon that portion of the Opinion in *Hibbard v. Taylor* recognizing that Taylor's cause of action first accrued "when the result of the appeal became final and the trial court's judgment became the unalterable law of the case. Only then was Taylor put on notice that the principal damage (the adverse judg-

ment) was real; but more importantly, only then could he justifiably claim that the entire damage was proximately caused by counsel's failure, for which he might seek a remedy...." *Id.* at 502.

Therefore, for reasons we have stated, we affirm the result reached in the Court of Appeals, which is to reverse the summary judgment and remand to the trial court. However, upon remand further proceedings should be in conformity with the principles articulated in this Opinion.

All concur.