ALAGIA, DAY, TRAUTWEIN & SMITH, a partnership consisting of: D. Paul Alagia, P.S.C., Bernard H. Barnett, Charles D. Barnett, W. Gary Blackburn, S.E. Bland, Stanton Braverman, William A. Carey, James L. Coorssen, Joseph M. Day, Robin E. Freer, Richard F. Frockt, Ronald L. Gaffney, Sheldon G. Gilman, Richard A. Gladstone, Marion Edwyn Harrison, David M.F. Lambert, Michael E. Lannon, David B. Marshall, Malcolm Y. Marshall, Donald F. Mintmire, A. Paul Prosperi, L. Arnold Pyle, William H. Schroder, Hugh Scott, Barry L. Shillito, Allan B. Solomon, Gerald A. Smith, John L. Smith, Herman E. Talmadge, Richard M. Trautwein, Dandridge F. Walton, Antonio R. Zamora, and Rudy Yessin, Appellants,

v.

Smith D. BROADBENT, Jr. and Mildred H. Broadbent, his wife; and Robert K. Broadbent and Smith D. Broadbent, III, Appellees.

No. 93–SC–631–DG.

Supreme Court of Kentucky.

June 23, 1994.

Rehearing Denied Sept. 29, 1994.

**122**

Fred M. Goldberg, David A. Brill, Mary A. Maple, Goldberg & Simpson, P.S.C., Armer H. Mahan, Jr., Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for appellants.

W.R. Patterson, Jr., Louisville, Paul K. Turner, Turner & Underwood, Hopkinsville, for appellees.

LAMBERT, Justice.

The underlying claim in this litigation is for negligence in connection with legal advice given by an attorney with respect to estate planning and gift taxes. On grounds that when brought the claim was time-barred by KRS 413.245, the trial court granted appellants' motion for summary judgment. The Court of Appeals reversed the trial court and adopted the "continuous representation rule," a doctrine of law which tolls the legal negligence statute of limitations so long as the attorney continues to represent the client in the matter. We affirm the Court of Appeals but upon grounds other than those it selected.

In or about 1980, appellees, Smith D. Broadbent, Jr., and Mildred H. Broadbent, husband and wife, engaged the professional services of Bernard Barnett, a senior partner of Barnett and Alagia, a Louisville law firm and predecessor firm to Alagia, Day, Trautwein & Smith. A short time prior thereto, Mr. Broadbent had suffered a heart attack and he sought professional legal services for estate planning. After consultation with Mr. Barnett, it was determined that Mr. and Mrs. Broadbent would convey substantial acreages of farm land to their two sons with payment to be made over a period of several years. It was projected that as each of several annual promissory notes came due, the principal would be forgiven and the sons would be required to pay only the interest accrued on the indebtednesses. By this means, it was anticipated that the real property could be transferred to the sons without payment of gift taxes.

After the documents were prepared by Mr. Barnett and executed by the Broadbents, a period of three or four years passed uneventfully. However, in connection with an Internal Revenue Service audit of the Broadbents' income tax returns, it was discovered that the farm land transferred to the sons had been substantially undervalued. The valuation used was the agricultural use value as determined by the county property valuation administrator rather than the fair market value as required by the IRS. As a result of this, the IRS initially determined that as of 1985, Mr. and Mrs. Broadbent owed 3.5 million dollars for gift taxes, penalties and interest.

Upon receiving a notice of tax deficiency, the Broadbents attempted to contact Mr. Barnett but were unable to do so. Instead, they contacted a Nashville attorney who was Mr. Broadbent's cousin, Ben Cundiff. The extent of Mr. Cundiff's participation is uncertain, but whatever the extent, it was of a short duration, from the end of April until the first of June, 1985. In June, the Broadbents were able to reach Mr. Barnett and his son, Charles D. Barnett, also an attorney in the law firm, and thereafter, until June of 1989, the Barnetts or some member of appellants' law firm represented the Broadbents in the tax matter.

It is unnecessary to fully recount the details of what transpired between June of 1985 and June 30, 1989, the date upon which all parties agree the representation came to an end. However, it appears that there were negotiations between the IRS and the law firm, and that members of the law firm reassured the Broadbents to a greater or lesser extent that their tax problems would be satisfactorily resolved. During this same period, Mr. Bernard Barnett died, Charles D. Barnett left the law firm, and Mr. Broadbent became incompetent by the onset of Alzheimer's disease.[1]

In the early part of 1989, the pace quickened. Letters to the Broadbents dated January 25, 1989, March 7, 1989, March 29, 1989, and April 3, 1989, from William C. Willock, Jr., the firm's attorney who was then handling the matter, revealed extensive negotiations with the IRS. According to the correspondence, the IRS had reduced its demand somewhat, alternatives for dealing with the problem were discussed, possible tax court litigation was reviewed, additional documents were requested, and the possibility of newly discovered evidence which would have changed the transfer date to 1984 was considered. From this correspondence and the deposition testimony, there is no doubt that appellants' law firm was actively representing the Broadbents. As emphasized by appellants, however, there is likewise no doubt that the January 25, 1989, letter brought forcefully to the Broadbent's attention that a substantial sum of money would be required by the IRS, but the exact amount remained uncertain. Finally, on June 30, 1989, the

Broadbents met with Mr. Willock who informed them that a sum in excess of three million dollars would be required in five days. Upon that date, the attorney-client relationship was terminated. Thereafter, a new law firm was employed and the IRS claim was settled for 1.2 million dollars.

This suit was filed in the Jefferson Circuit Court on June 18, 1990, less than one year after the attorney-client relationship was terminated and less than one year after the final amount due was determined. However, June 18, 1990, was more than one year after the date of the original deficiency notice, more than one year after the consultation with Mr. Cundiff, and more than one year after the Willock letter of January 25, 1989, by which the Broadbents were definitely informed that some payment of money would be required.

In the opinions of the courts below, one encounters divergent views. Relying on *Graham v. Harlin, Parker & Rudloff,* Ky. App., 664 S.W.2d 945 (1983), and KRS 413.245, the trial court applied the discovery rule and determined that the one year period of limitation began when the Broadbents received the 1985 deficiency notice or assessment for back taxes. It recognized that at that time the damages occasioned by the negligent legal representation were uncertain, but suggested that a possible solution would have been to file suit promptly and then seek a stay while the tax negotiations or litigation progressed. The opinion considered the continuous representation rule as discussed in *Gill v. Warren,* Ky.App., 751 S.W.2d 33 (1988), but distinguished this case on the grounds that the attorneys here had not lied to the clients or concealed their actions. The trial court also considered the significance of the Broadbents' consultation with Mr. Cundiff and concluded that as a result, they lost that quality of "innocent reliance," an element it believed to be a foundation of the continuous representation rule. The trial court also found other difficulties with the rule and declined to apply it.

Reversing the trial court, a divided panel of the Court of Appeals applied the continu-

---

1. Thereafter, pursuant to a general power of attorney, Smith D. Broadbent, III, commenced transacting business on his father's behalf.

ous representation rule and held the Broadbents' claim to have been timely brought. Reasoning from our decision in *Hibbard v. Taylor*, Ky., 837 S.W.2d 500 (1992), the court held that proof of concealment or fraud was unnecessary; that based on the fiduciary relationship between the parties, there should be a presumption of reliance by the client upon the attorney's advice without any need to prove more. A significant feature of the Court of Appeals opinion appears to have been representations alleged by the attorneys that the matter would be taken care of and for the clients not to worry.

While this Court has faithfully observed legislative mandates by which claims not brought in the time required are held to be barred, we have shown no reluctance to construe such statutes in a manner which prevents parties from profiting by their own machinations.[2] We have acknowledged the value of statutes which bar stale claims arising out of transactions or occurrences in the distant past, despite their arguable conflict with various sections of the Constitution of Kentucky, but carved out exceptions, foremost among them being estoppel or some facet thereof, to prevent fraud or inequity. Such was the holding in *Munday v. Mayfair Diagnostic Laboratory*, Ky., 831 S.W.2d 912 (1992), wherein parties required to file a certificate of doing business under an assumed name were denied benefit of the applicable statute of limitation during the period of their noncompliance with the law. The Court reasoned that as the purpose of the assumed name statute was to inform the public of the identity of persons so engaged in business, their failure to comply should be regarded as an obstruction within the meaning of KRS 413.190(2) resulting in an estoppel.

The duty of full disclosure in a professional services relationship renders estoppel a useful theory for those seeking to avoid limitations statutes, but two major shortcomings in this context are the uncertainty of information given and the necessary breach of the

professional relationship. *Gill v. Warren, supra*, identified many of the problems inherent in permitting statutes of limitations to run while a professional relationship is ongoing, but due to the posture of the case, remanded for a finding as to whether the deceit allegedly practiced was sufficient to result in estoppel. The Court pled, nevertheless, for adoption of the continuous representation rule:

> The facts in this case ... illustrate the compelling need for further protection for the unwary and unsophisticated than may be afforded by the discovery rule.

*Id.* at 35.

In recent years, a number of Kentucky appellate court decisions and a U.S. District Court decision applying Kentucky law have confronted KRS 413.245. For those with an interest in studying the progression of the law in this area, reference is made to *Conway v. Huff*, Ky., 644 S.W.2d 333 (1982); *Graham v. Harlin, Parker & Rudloff, supra; Northwestern Nat. Ins. Co. v. Osborne*, 610 F.Supp. 126 (E.D.Ky.1985); and *Gill v. Warren, supra*. For our purposes, however, it is sufficient to fully review only our two most recent decisions on point, *Hibbard v. Taylor*, Ky., 837 S.W.2d 500 (1992), and *Michels v. Sklavos*, Ky., 869 S.W.2d 728 (1994), as they take full account of the earlier cases.

In *Hibbard*, the action for legal malpractice was brought more than one year after the negligent act occurred, but within one year of the adverse appellate court decision which terminated the underlying litigation. The attorney contended that under the discovery rule, the client knew or should have known of the negligence on the date of the adverse trial court judgment. The client contended that he had no cause of action and thus could not have discovered one until the fact of the injury became final at the end of the appellate process. This Court agreed with the client's interpretation, in part, on the assumption that by having taken an appeal, the attorney placed the error on the

---

**2.** While deception or lack of full disclosure is not essential to our decision, there is evidence in the record that prior to termination of the attorney-client relationship, appellants recognized their probable negligence but failed to so advise the

Broadbents. Appellants appear to have taken comfort in their belief that a legal malpractice claim against them was time-barred by KRS 413.245.

trial court and not on himself. Rhetorically, we asked whether laymen should be charged with knowledge of legal malpractice when legal counsel insists that the fault is with the trial court. The Court concluded with the view that only at the end of the appellate process was the client put on notice that negligence may have occurred and only then could he assert that the damage was caused by his counsel's error.

In *Michels,* this Court again confronted KRS 413.245, the statute at issue here. Analyzing the statute, we observed that there are actually two periods of limitation, the first being one year from the date of the *occurrence* and the second being one year from the date of *discovery* if it is later in time. The Court noted that if suit was brought within one year of the date of occurrence, the discovery date became irrelevant. We further stated that the statutory terms "occurrence" and "cause of action" are synonymous, and relying on *Hibbard,* held that there was no occurrence until finality of the underlying claim. We reasoned that until then, the mistake which might ultimately cause damage was speculative and that to construe it otherwise might cut off claims which had not yet accrued. The Court rejected the idea that discovery prior to finality of the underlying claim commenced the running of the statute, reasoning that proper defenses might not be asserted or that the court could reject the defenses. We said, "Until then [finality of the underlying claim], no damages flowed from such negligence if any there was." *Id.*

In *Michels,* the Court also discussed favorably the continuous representation rule, but noted its inapplicability to the facts because termination of the negligent legal counsel was more than one year before the malpractice action was commenced. Thus, the case was resolved on the occurrence rule by which the commencement of the statutory period was postponed until finality of the underlying litigation, when the injury had become irrevocable and non-speculative.

The parties have practiced this case and the courts below have decided it on the basis of the continuous representation rule. As such, and despite our view that it is not controlling here, we nevertheless deem it expedient to analyze the soundness of the rule.

The continuous representation rule is a branch of the discovery rule. In substance, it says that by virtue of the attorney-client relationship, there can be no effective discovery of the negligence so long as the relationship prevails. This recognizes the attorney's superior knowledge of the law and the dependence of the client, and protects the client from an unscrupulous attorney. We believe it to reflect the intent of the General Assembly with its enactment of the discovery rule. Moreover, we perceive a practical advantage in the continuous representation rule. In a proper case, a negligent attorney may be able to correct or mitigate the harm if there is time and opportunity and if the parties choose such a course. Without it, the client has no alternative but to terminate the relationship, perhaps prematurely, and institute litigation. Finally, without the continuous representation rule, the client may be forced, on pain of having his malpractice claim become time-barred, to automatically accept the advice of a subsequent attorney, one who may be mistaken, over the advice of the current attorney. In such a circumstance, the client may be without any assurance that the latter attorney's views are superior to those of the former, but must nevertheless choose between them.

These are sound theoretical and practical reasons for adoption of the continuous representation rule. If this was the decisive issue, appellees would prevail as their claim was brought within one year of the date appellants' representation came to an end. *See Wall v. Lewis,* 393 N.W.2d 758 (N.D.1986), for a comprehensive discussion.

Despite the foregoing, this case must be decided on the occurrence rule as discussed in *Michels* and urged by appellees, the Broadbents. Until the legal harm became fixed and non-speculative, the statute did not begin to run. As such, the statute was tolled until the subsequent law firm and the IRS settled the claim. This suit was brought on June 18, 1990, well within one year of this event. We hereby overrule *Graham v. Harlin, Parker & Rudloff,* Ky.App., 664 S.W.2d 945 (1983), to the extent it differs herewith.

**126**

Four dates have been presented as possible dates for commencement of the statute of limitations. The first is the 1985 IRS notice and the virtually simultaneous consultation between the Broadbents and attorney Cundiff. This date is inapplicable for two reasons: At that time, there had been no occurrence because the negligence and damages were speculative and there could have been no discovery because of the continuous representation by appellants and the presumed reliance of the clients upon the advice given. The second date suggested is January 25, 1989, when attorney Willock wrote the Broadbents and informed them that a substantial payment would be required. This, too, is an improper date and for the above stated reasons. The third date, June 30, 1989, when the attorney-client relationship was terminated, has provoked intense legal debate. While the events of this date were sufficient to trigger commencement of the statute if there had been an occurrence, the discovery of negligence was ineffective as the final result was not yet known. Not until damages were fixed by the final compromise with the IRS was there an occurrence of the type required to commence the running of the statute.

■ It should not be overlooked that this is a negligence case. To recover for negligence, there must be, at a minimum, a negligent act or omission and legally cognizable damages. *Hibbard* and *Michels* explained the necessity of the damage element as follows:

> Only then [when the adverse judgment became the unalterable law of the case] could he justifiably claim that the entire damage was proximately caused by counsel's failure, for which he might seek a remedy.

*Michels* at 733 quoting *Hibbard* at 502. This is in accord with our recent decision in *Capital Holding Corp. v. Bailey,* Ky., 873 S.W.2d 187 (1994), wherein we held that one who had been negligently exposed to a disease but had not yet contracted the disease was then *without an action for damages.* We relied on *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973), as follows:

> A cause of action does not exist until the conduct causes injury that produces loss or damage.

*Id.* at 225. We concluded that any action for damages must await manifestation of the disease, but until such time, the applicable statute of limitations does not commence to run.

For these reasons, we affirm the Court of Appeals and remand this cause to the trial court for further proceedings consistent herewith.

STEPHENS, C.J., and LEIBSON, SPAIN, STUMBO and WINTERSHEIMER, JJ., concur.

REYNOLDS, J., concurs in result only.