George DAVIS, Gary Becker and J. Thomas Galle, Movants/Cross–Respondents,

v.

ALL CARE MEDICAL, INC., Respondent/Cross–Movant.

Nos. 97–SC–614–DG, 98–SC–247–DG.

Supreme Court of Kentucky.

March 25, 1999.

Melbourne Mills, Jr., Versailles, Roy Kimberly Snell, Croley, Moore & Snell, PSC, LaGrange, for Movants/Cross–Respondents.

Stephen R. Chappel, Thomas M. Cooper, Landrum & Shouse, Lexington, for Respondent/Cross–Movant.

THOMAS N. KERRICK, Special Justice.

We granted discretionary review of the Court of Appeals' opinion affirming a summary judgment dismissing Plaintiff's complaint for failing to file suit within the one year personal injury statute of limitations; but reversing and remanding for trial of any tort actions of the Defendant which occurred within one year of the filing of the complaint.

## FACTS

The Plaintiff, George Davis, is a paraplegic and has been confined to a wheelchair since being struck by an automobile in 1968, when he was 7 years old. The Defendant, All Care Medical, Inc., sells durable medical equipment and supplied a wheelchair to Mr. Davis on May 4, 1990, at which time he was 29 years of age. Prior to All Care providing Mr. Davis with a wheelchair, he had owned 10–12 wheelchairs and had not experienced any problems with decubitus ulcers, a type of pressure sore, other than one at age 9, prior to being instructed on how to care for himself in a wheelchair.

After receiving All Care's wheelchair on May 4, 1990, Mr. Davis began developing decubitus ulcers on his toes and heel within two months. Over the next few months, he developed a sore behind his knee and ultimately on his low back or sacrum. Plaintiff received treatment for these decubitus ulcers at least by September 28, 1990, from Dr. Patrick Sheridan, an internist with the Franklin Medical Center in Frankfort. In October of 1990, plaintiff's condition had deteriorated to the point that he quit his job as a computer operator for the IRS.

Although the ulcers on Mr. Davis' feet and knee had healed, on February 28, 1991, he saw Dr. Harry Derderian, an orthopedic specialist at the Lexington Clinic, at which time the decubitus ulcer on his back had progress-

ed to the point that bone was exposed. On March 7, 1991, All Care picked up Mr. Davis' wheelchair and provided him with a loaner until April 10, 1991, at which time All Care returned Mr. Davis' original wheelchair after having shortened the seat.

On June 28, 1991, Mr. Davis saw Dr. Wilson, a plastic surgeon at the University of Kentucky Medical Center, for the continuing problem with the decubitus ulcer on his low back. Dr. Wilson apparently told him that the wheelchair was causing this problem. Dr. Wilson has not testified by deposition nor are his records in the court file; however, there does not appear to be a genuine issue as to this fact since the Plaintiff admits it in his deposition. Further, attached as Exhibit 1 to Dr. Sheridan's deposition is a copy of Dr. Sheridan's office note for June 29, 1991, in which Mr. Davis advised Dr. Sheridan that Dr. Wilson had "... indicated to him the decubitus ulcer probably was caused, or certainly a contributing factor was, the wheelchair ..." Dr. Sheridan's office note of August 10, 1991, states that "George is here for a long discussion on the problems he is having with his wheelchair. He was evaluated by Lexington Clinic, but does not have his wheelchair yet. I think he is waiting for further evaluation."

On October 1, 1991, All Care began keeping a record or log on the Plaintiff. On October 30, 1991, All Care sent a fitter to Mr. Davis' house to measure him. A new chair was recommended for Mr. Davis in November of 1991, but due to Mr. Davis switching to a different insurance company in January of 1992, he obtained a new chair from a different supplier, Lovejoy, in March of 1992, ending his dealings with All Care.

A summary of Plaintiff's legal representation and lawsuit is also helpful. In October of 1991, Mr. Davis retained the Becker Law Firm to represent his interest on this claim. On December 16, 1991, the Becker Law Office sent a demand letter to All Care identifying the injury date as September 1, 1991. On September 2, 1992, suit was filed by attorneys Becker and Galle (an attorney in the Becker Law Firm) on behalf of Mr. Davis against Plaintiff's insurance company, Humana, and All Care. Humana filed a motion for summary judgment but was dismissed by agreed order dated March 16, 1993.

On August 20, 1993, Mr. Davis filed a civil action in the same circuit court against attorneys Becker and Galle alleging legal malpractice. The malpractice action was held in abeyance pending resolution of Mr. Davis' underlying personal injury claim. On August 24, 1993, Mr. Davis gave notice that he had changed attorneys in the personal injury action and an entry of appearance was filed on behalf of Melbourne Mills, Jr., of Versailles.

Attorneys Becker and Galle were allowed to intervene in this personal injury action by order of the Franklin Circuit Court dated November 3, 1993, for the purposes of litigating the statute of limitations issue. On or about February 21, 1995, All Care filed a motion for summary judgment on the basis that Plaintiff's cause of action was barred by KRS 413.140, the one year personal injury statute of limitation. Attorneys Becker and Galle filed a response to All Care's motion for summary judgment. By order of the Franklin Circuit Court dated August 15, 1995, the trial court granted All Care's motion for summary judgment and dismissed Davis' cause of action.

On July 3, 1997, the Court of Appeals affirmed the summary judgment in part and reversed and remanded in part, allowing the Plaintiff to proceed against All Care for any acts of negligence that occurred within one year of the filing of the complaint on September 2, 1992. Plaintiff then filed a motion for discretionary review with this Court and All Care filed a cross-motion for discretionary review. Both motions for discretionary review were granted.

Mr. Davis argues that the Court should adopt the doctrine of continuing negligence or wrong and allow the Plaintiff to recover for all improper actions by All Care. In the alternative, the Plaintiff argues that the limitations period should be tolled due to the doctrine of estoppel based on KRS 413.190(2) and further argues that if the discovery rule applies, then an issue of fact exists as to when Davis "knew or reasonably should have known" that All Care was responsible for his

injury. All Care argues that the entire complaint should be dismissed and any actions by All Care after September 1, 1991, could, at best, only be considered failed attempts to correct a wrong.

## CONTINUING NEGLIGENCE THEORY

■ Kentucky has not adopted the continuing negligence theory. This theory provides that where a tort involves a continuing or repeated injury, then the cause of action does not accrue and the limitations period begin to run until the date of the last injury.

The Court of Appeals accurately set forth the policy considerations for this doctrine. The advantage to the continuing negligence theory is that it reduces litigation by encouraging potential litigants to continue their relationship which would hopefully resolve the issue without one party filing a lawsuit. The disadvantage to the continuing negligence theory is that potential claims which clearly exist could be put off for an indefinite period of time.

The continuing negligence theory has been applied in other jurisdictions in various cases and Plaintiff's most appropriate example or analogy appears to be in the medical malpractice area; however, two problems arise with this analogy. First, this is not a medical malpractice action but a purchase of a wheelchair from a medical supply company. Second, there is not a continuing, ongoing relationship between Mr. Davis and All Care. The wheelchair was delivered on May 4, 1990, and there does not appear to be any further contact between the parties until March 7, 1991, at which time All Care picked up the wheelchair from Mr. Davis to adjust it. A loaner was provided by All Care to Mr. Davis until the alterations were completed and the chair returned to Mr. Davis on April 10, 1991. Some phone calls may have been exchanged between the parties and a record or log regarding Mr. Davis was started by All Care on October 1, 1991, but the next face to face contact was on October 30, 1991, when an All Care representative visited Mr. Davis in his house. This may be a series of independent acts by All Care but this is certainly not the series of continuing repeated tortious acts which the continuing negligence or continuing treatment theory contemplates.

■ The continuing negligence theory is not applicable to these facts. Even if it were, the most appropriate translation of the continuing negligence theory for Kentucky includes a reasonably prudent person test which Mr. Davis cannot pass. This approach was described by the Delaware Supreme Court in *Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987) which stated that whether the statute of limitations has started to run was dependent upon the objective test of the reasonably prudent person. The Delaware Supreme Court went on to explain that there was qualification to this test and stated specifically as follows:

> . . . . However, we also hold that there shall be a presumption that a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on the date of the consultation with the independent health care provider. If a patient receives independent medical advice from a skilled health care provider in the form of a second opinion or consultation, the patient has a duty of inquiry not only about his condition but about his prior course of medical treatment.

Id. at 664.

Dr. Wilson, the plastic surgeon at the U.K. Medical Center who saw Mr. Davis on June 28, 1991, and told him his problem related to his wheelchair, would certainly qualify as an "independent health care provider" who placed Mr. Davis on notice of his problem and cause of action. Under this application of the continuing negligence theory, the Plaintiff's complaint would be completely barred.

Plaintiff argues that Kentucky has applied the continuing negligence theory in nuisance cases as well as legal malpractice actions; however, the Court of Appeals has accurately distinguished these two theories also. As set forth in *Lynn Mining Co. v. Kelly, Ky.,* 394

S.W.2d 755 (1965), "The injection of the concept of negligence into various aspects of the law of nuisance has caused endless and unnecessary difficulties. The time has come to remove it ." *Id.* at 758. This continues to be an accurate statement of the law and again, we choose not to interject negligence into nuisance cases.

With regard to legal malpractice claims, while the continuous representation rule is discussed as a branch of the discovery rule, these cases are decided based upon "the occurrence rule" which centers around the "finality of the underlying litigation, when the injury had become irrevocable and non-speculative." *Alagia, Day, Trautwein & Smith v. Broadbent,* Ky., 882 S.W.2d 121, at 125 (1994). The claim against All Care need not wait for an occurrence because plaintiff's injury, certainly by June 28, 1991, had become irrevocable and non-speculative.

This Court declines to adopt a continuing negligence theory under the facts of this case and holds that the actions of Defendant All Care should be considered independent acts of negligence, if any. The affidavit of Doris Shriver, an occupational therapist, creates genuine issues of material fact as to All Care's actions from October of 1991, through March of 1992, when Mr. Davis was ultimately provided another wheelchair by another medical equipment supplier. Consequently, the Court of Appeals is affirmed in that the Plaintiff's complaint is dismissed as to all acts occurring prior to September 1, 1991, but the Plaintiff can go forward on any negligent acts occurring on or after said date due to the fact said actions occurred within one year from the date of the filing of the complaint.

### DISCOVERY RULE

■ Plaintiff also argues that the discovery rule set forth in KRS 413.140(2) should be applied to this action. The language of KRS 413 .140(2) relates to claims against physicians, surgeons, dentists or hospitals. This is clearly not such a claim and KRS 413.140(2) has no application to this case.

The discovery rule has also been applied in latent disease cases such as *Louisville Trust Co. v. Johns–Manville Products,* Ky., 580 S.W.2d 497 (1979); however, these type cases center around injuries of an inherently unknowable nature. Mr. Davis' case is not such an injury. Furthermore, as the discovery rule uses a reasonably prudent person test, Plaintiff's cause of action would be barred for the same reasons as to why the action would be barred under the reasonably prudent person version of the continuing negligence theory.

### ESTOPPEL

■ Plaintiff's final argument relates to estoppel as set forth in KRS 413.190(2) which states in part "... by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action...." Mere statements by a defendant that it would fix the problem does not rise to the level of the statute. *Cuppy v. General Acc. Fire & Life Assur. Corp.,* Ky., 378 S.W.2d 629 (1964). All Care certainly did not abscond or conceal itself nor did it obstruct the prosecution of this action by Mr. Davis. The facts of this action do not support an estoppel cause of action and KRS 413.190(2) does not apply.

For these reasons, we affirm the Court of Appeals and remand this matter to the trial court for further proceedings consistent herewith.

LAMBERT, C.J., and GRAVES, JOHNSTONE, STEPHENS and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

COOPER, J., not sitting.