**Donna Sue Fischer FARIS Appellant/Cross Appellee**

v.

**Thomas K. STONE Appellee/Cross Appellant**

**No. 2001–SC–0864–DG, 2002–SC–0424–DG.**

Supreme Court of Kentucky.

April 24, 2003.

As Amended June 11, 2003.

Matthew B. Troutman, Delores H. Pregliasco, Melanie Straw–Boone, Louisville, for Appellant/Cross–Appellee.

Roy Kimberly Snell, LaGrange, for Appellee/Cross–Appellant.

LAMBERT, Chief Justice.

Professional negligence claims must be brought by the injured party within one year of the date of the occurrence or the date of discovery.[1] Despite uncontradicted evidence that Appellant discovered her claim against Appellee on or before August 28, 1995, she failed to file a claim for damages until November 7, 1997, more than one year after the date of discovery. Instead of bringing a claim for damages within one year, Appellant filed a motion under CR 60.02 seeking to re-open the underlying divorce litigation. Thereafter, she claimed that this effectively tolled the statute of limitations and the trial court so held. On appeal, after entry of a final judgment upon a jury verdict, the Court of Appeals reversed, holding that the claim was time-barred. We affirm the Court of Appeals.

Upon the dissolution of their marriage, it appears that Donna Faris was defrauded by her husband, William V. Faris, and/or negligently represented by her attorney, Thomas K. Stone, with respect to division of marital property. In the parties' settlement agreement, Ms. Faris received only the sum of $1,500 which purported to represent 50% of Mr. Faris' interest in six businesses. Mr. Faris represented that the businesses had a total value of $3,000. Ms. Faris' attorney, Thomas K. Stone, did not obtain any independent evaluation of the businesses and did not inform Ms. Faris of her right to have such an evalua-

---

1. KRS 413.245.

tion. A jury later determined that Ms. Faris should have received $162,100, not the $1500 she actually received pursuant to the agreement.

About two years after the final divorce decree, Ms. Faris became suspicious that she had been mistreated. In response, she sought legal counsel from attorney Deloris Pregliasco, and in the course of an August 28, 1995 meeting between the two, Pregliasco informed Ms. Faris that her former attorney, Stone, had been negligent in handling the divorce with respect to valuation of the businesses.

On June 14, 1996, less than one year later, Ms. Faris sought relief pursuant to CR 60.02(d), alleging that her ex-husband had committed fraud affecting the proceedings by undervaluing the businesses. The negligence, if any, of her former attorney, Stone, was not raised in the CR 60.02 motion. About seven months later, the CR 60.02 motion was denied and no appeal was taken from the order. Thereafter, on November 7, 1997, more than two years after she learned of Stone's negligence, Ms. Faris brought this claim against Stone alleging legal malpractice.

In the Jefferson Circuit Court, Stone moved to dismiss based on the one year period of limitation set forth in KRS 413.245. The court recited that both parties had agreed that Ms. Faris discovered her potential suit against Stone more than one year prior to the date she filed her malpractice claim, and articulated the issue as follows: "Therefore, her action is untimely unless the CR 60.02 motion somehow tolled the statute." The trial court then analyzed *Hibbard v. Taylor*,[2] *Michels v. Sklavos*,[3] and *Alagia, Day, Trautwein &*

*Smith v. Broadbent*[4] and concluded that a legal malpractice action should be analyzed differently than a "normal" tort. The trial court reasoned that unlike an injury case in which a party can never be made truly whole, in some cases, legal malpractice can be erased and the parties restored to the position they occupied prior to the negligent act or omission. The court concluded that sound policy should encourage remedial conduct and authorized use of CR 60.02 as a means to extend the time for bringing a claim for damages until after the motion had been ruled upon. The motion to dismiss was overruled and the case proceeded to trial. Judgment was entered in favor of Ms. Faris.

The Court of Appeals reversed the trial court. That court also relied on *Hibbard, Michels,* and *Alagia* as controlling authority as well as *Northwestern National Insurance Company v. Osborne*[5] and *Meade County Bank v. Wheatley*.[6] The Court of Appeals focused on the test set forth in *Northwestern* to the effect that the date the statute begins to run "is the date of an irrevocable non-speculative injury."

In this Court, Ms. Faris maintains the position she has taken throughout this litigation, that her CR 60.02 motion tolled the statute of limitation until a ruling was rendered. She reasons that litigation of CR 60.02 motions encourages mitigation of damages, and that to disallow tolling of the statute will cause attorneys to be sued for legal malpractice before alternative remedies have been pursued. She argues that since the second attorney's efforts to undo the mistakes of the first were not abandoned until the CR 60.02 motion was de-

2. Ky., 837 S.W.2d 500 (1992).

3. Ky., 869 S.W.2d 728 (1994).

4. Ky., 882 S.W.2d 121 (1994).

5. 610 F.Supp. 126 (E.D.Ky.1985), *aff'd,* 787 F.2d 592, 1986 WL 16729 (6th Cir.1986).

6. Ky., 910 S.W.2d 233 (1995).

nied, her damages did not become certain and non-speculative until that time. Had she prevailed upon the CR 60.02 motion and thereby obtained re-division of marital property, she further argues, there would have been no need to sue her former attorney. Mr. Stone responds that the statute cannot be applied with such flexibility and criticizes our decisions wherein he believes the statute has been improperly applied.

Our leading cases in this area are *Hibbard*, *Michels*, and *Alagia*. In *Hibbard*,[7] the legal malpractice action was brought more than one year after the underlying negligent act, but within one year of the adverse appellate court decision that brought the underlying litigation to a close. This Court held that the statute of limitations did not begin to run until the end of the appellate process, at which time the client was put on notice that damage had occurred. The rationale was that a layperson should not be charged with knowledge of legal malpractice when legal counsel posits trial court error and pursues a course of action consistent with that view. Moreover, the view was expressed that causation would be lacking until the appellate process had run its course.

In *Michels*,[8] this Court addressed the effect on the statute of limitations in legal malpractice when new counsel is hired during the pendency of the underlying litigation. This case involved a lawsuit for wrongful employment discharge. While the underlying federal lawsuit was pending, the client discharged his first counsel and hired a new attorney. Thereafter, the federal lawsuit was dismissed upon the employer's motion because available administrative remedies had not been first pursued. The client then filed a legal malpractice claim against his first attorneys, and the issue was when the statute of limitations commenced: at the time the client retained new counsel, i.e., when he knew or should have known of the alleged malpractice, or at the termination of the underlying litigation upon which the legal malpractice claim was based.

This Court observed that KRS 413.245 actually contains two periods of limitation: the first period begins one year from the date of the negligent act or omission, and the second period begins on the date of discovery if it is later in time.[9] In *Michels*, we held that the statute of limitations does not commence until finality of the underlying litigation, even if subsequent counsel had previously advised the client of alleged malpractice, because until that latter time injury was merely speculative. We reasoned that damages were contingent upon whether the employer would assert the lack of an administrative claim as an affirmative defense, and upon whether the federal court would rule in favor of the employer if such defense were asserted. Thus, the client's knowledge or imputed knowledge of a potential malpractice claim was not decisive until there was a final adverse determination of the underlying claim.

Our most recent case, *Alagia*, presented highly unusual circumstances and by virtue of our decision, the statutory period was significant. Over a long period of time, appellees and appellees' decedent had an attorney/client relationship with the appellant law firm. The law firm established an estate plan whereby farm land could be transferred to the owners' sons without payment of gift taxes. Upon an audit by the Internal Revenue Service, it

7. 837 S.W.2d 500 (1992).

8. Ky., 869 S.W.2d 728 (1994).

9. Kentucky adopted the 'discovery rule' in *Tomlinson v. Siehl*, Ky., 459 S.W.2d 166, 167–168 (1970).

**4**

was determined that the farm land transferred to the sons had been substantially undervalued, resulting in a $3.5 million assessment for gift taxes, penalties, and interest. Unable to establish contact with the law firm, the clients contacted another attorney, but soon re-established contact with the original law firm. There were negotiations between the IRS and the law firm, and the members of the law firm assured the clients that the tax problems would be satisfactorily resolved. In January 1989, however, an IRS letter stated that although the amount was still uncertain, payment would be definite and substantial. Thereafter, the sum of $3 million was assessed. The clients then terminated their relationship with the law firm, retained new counsel, and eventually the sum of $1.2 million was negotiated with the IRS.

This Court debated when the limitations period started: whether it was the date of the original deficiency notice, the time of the consultation with second counsel, the date of the January 1989 IRS letter, or the date of termination of the attorney-client relationship. We considered as sound yet declined to decide the case upon the "continuous representation rule," a branch of the discovery rule that permits no effective discovery of the professional negligence so long as the original attorney-client relationship prevails. Instead, the Court decided the case upon the occurrence rule, and held that the statute was tolled until the legal harm became fixed and non-spec-

ulative, i.e., when the subsequent law firm and the IRS settled the claim for $1.2 million.

■■■■ While the foregoing cases are instructive, none addresses the situation presented here. We begin with the observation that CR 60.02 is not an appellate vehicle.[10] It is not a part of the normal progression of litigation, but is an extraordinary procedure whereby a collateral attack is made upon a judgment upon specific grounds set forth in the rule. As such, a CR 60.02 claim is not of the same character as an appeal of right or a motion for discretionary review. It is separate and distinct from the main case, and a party may not use it as a means to extend a statutory period.[11] If it were otherwise, statutes of limitation would pass into nonexistence because CR 60.02(d), (e), and (f) are without any outer limits with respect to time. As such, a party could always bring a CR 60.02 motion and thereby revitalize a time-barred claim. Statutes of limitation are arbitrary and unfair, but they represent a policy decision made by the legislative branch of government that after the passage of specified periods of time, claims are not viable.[12] The policy-making branch of government has determined that the value in prevention of stale claims outweighs the detriment inflicted upon a tardy litigant.[13]

Accordingly, we decline to adopt Ms. Faris' argument that the date of her injury did not become fixed and nonspeculative

---

**10.** *McQueen v. Commonwealth*, Ky., 948 S.W.2d 415, 416 (1997)("CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings"); *Urban Renewal & Community Dev. Agency v. Goodwin*, Ky., 514 S.W.2d 190, 191 (1974).

**11.** *Mathews v. Mathews*, Ky.App., 731 S.W.2d 832, 834 (1987)("Cr 60.02 is not intended as a

vehicle to commence an action or to avoid the jurisdiction and/or procedural prerequisites established by our legislature").

**12.** *Barker v. Miller*, Ky., 918 S.W.2d 749, 751 (1996); *Armstrong v. Logsdon*, Ky., 469 S.W.2d 342 (1971); *McDonald v. U.S.*, 315 F.2d 796 (C.A.Ky.1963).

**13.** 51 Am.Jur.2d, *Limitations of Actions* § 13.

until the denial of the CR 60.02 motion. Pursuant to KRS 413.245, the latter of the date of occurrence or the date of discovery of the negligence commences the one-year statute of limitations. The date of occurrence was the time when the underlying divorce decree became final.[14] As Ms. Faris was not aware of the alleged malpractice at this time, the date of discovery governs commencement of the limitation period. Thus, the one-year period began when she learned that her case had been negligently practiced.

In so holding, we view as distinguishable *Alagia*, wherein the injury did not become fixed and non-speculative until the ongoing negotiations with the IRS were concluded and a final sum determined. Ongoing negotiations as in *Alagia* are not analogous to litigation, either in the underlying case or the CR 60.02 claim. A better analogy to *Alagia* would be negotiations between the parties prior to filing their divorce petition.

As a final thought, we observe that in malpractice cases in which the underlying negligence occurred during the course of formal litigation, Kentucky decisional law has consistently held that the injury becomes definite and non-speculative when the underlying case is final.[15] At that time, the one-year statute of limitations begins to run. In *Alagia* and *Meade County Bank v. Wheatley*,[16] however, the malpractice arose from legal work that was not part of formal litigation. *Alagia* involved an estate plan, and *Wheatley* involved a title search. Thus, it was necessary to decide when a malpractice injury becomes fixed and nonspeculative in the absence of an underlying court case. In *Alagia*, it was when a final compromise was reached and damages became fixed; in *Wheatley*, it was after the foreclosure sale of the subject property.[17] Unlike these cases, the "occurrence rule" is more suited to the instant case, as the underlying negligence occurred in the course of formal litigation.

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

All concur.

---

14. *See Barker* at 751 (following occurrence rule, court held that limitations period began on date that Kentucky Supreme Court denied discretionary review, although *statute* would have been tolled had aggrieved client filed writ of certiorari in United States Supreme Court); *Stephens v. Denison*, Ky.App., 64 S.W.3d 297, 300 (2001)(legal malpractice cause of action based upon underlying criminal case does not begin to run until appeal is final).

15. *Hibbard, Michels, Barker, Stephens*.

16. Ky., 910 S.W.2d 233, 235 (1995).

17. *See also Seigle v. Jasper*, Ky.App., 867 S.W.2d 476, 483–484 (statute of limitations for legal malpractice began to run when plaintiffs discovered oil pipeline easement that had not been recorded in title opinion, instead of date title opinion prepared).