Cynthia PEDIGO, Appellant,

v.

Michael BREEN, Appellee.

No. 2003–SC–0028–DG.

Supreme Court of Kentucky.

Oct. 21, 2004.

As Modified on Denial of Rehearing
Feb. 17, 2005.

Michael A. Schafer, Louisville, Counsel for Appellant.

Barton D. Darrell, Elizabeth W. Burt, Bell, Orr, Ayers & Moore, P.S.C., Bowling Green, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

KRS 413.245 provides that a claim for professional negligence shall be brought within "one year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party." Appellant, Cynthia Pedigo, consulted with

Appellee, attorney Michael Breen, concerning a possible claim against breast implant manufacturers for defective products. After their consultation, Breen declined to represent Pedigo, and she claims that he lost her original medical records. As a result of the lost medical records and upon her claim of damages therefrom, Appellant filed suit against Breen on June 21, 1999, almost seven years after the initial consultation. Here, we must decide whether Pedigo's final settlement with the breast implant manufacturer in 1998 began the running of the one year statute of limitations, or whether her claim was barred at an earlier date. We hold that because the underlying litigation did not reach a final conclusion until June 30, 1998, only then did Pedigo's damages become fixed and non-speculative. As Appellant brought her claim within one year of that date, it was timely.

The procedural history of this case is that the Warren Circuit Court dismissed Appellant's lawsuit against Appellee Breen on grounds that she did not bring her claim within the allotted one year period. The Court of Appeals affirmed in a unanimous opinion, and rejected Appellant's claim that she had timely filed within one year of the date that her legal harm became fixed and non-speculative. Upon the Court of Appeals decision, we granted discretionary review.

In response to Breen's advertisements seeking clients to pursue a class action lawsuit against breast implant manufacturers, Appellant sought Breen's representation because she attributed certain medical problems to her breast implants. Appellant alleges that she delivered her original medical records to attorneys working in Breen's office during the initial meeting. In August 1992, Breen notified Appellant that he would not take her case due to lack of scientific evidence and the high cost associated with that type of case. Appellant claims that she went to Breen's office several days later to retrieve the case file, but her original medical records were not there. To no avail, Appellant repeatedly contacted Breen's office and requested that her medical records be returned. For his part, Breen contends that he could not have lost any medical records because Appellant never brought them in for his review; that he never had them in his possession.

Appellant continued pursuit of her breast implant claim through attorney Flora Templeton Stuart. Stuart represented Appellant through 1996 when Appellant sought to join Multi–District Litigation (the "MDL") against manufacturers of breast implants. Appellant was denied participation in the MDL because she lacked her original medical records. In February of 1996, Stuart suggested that Appellant pay for new examinations by physicians. Appellant agreed and participated in several medical examinations accumulating thousands of dollars in fees. Appellant paid $400 for tests to determine who had manufactured the breast implants. On July 1, 1997, Resch Engineering issued a report concluding that the 3M Company had manufactured the products. Appellant subsequently hired attorney Michael Schafer to represent her. After receiving notice that she would not receive a settlement offer due to the loss of her medical records, Appellant opted out of the MDL class action. She considered filing an individual lawsuit against 3M, but chose instead to settle her claim with 3M for $50,000 on June 30, 1998. Appellant later obtained information indicating that if she had been allowed to participate in the MDL, she would have received five times more than she received in the actual settlement.

On June 21, 1999, almost one year after her final settlement with 3M, Appellant brought this legal negligence claim against Breen. Appellant claims that on June 30, 1998, the date of the 3M settlement, her damages ceased to be speculative. She contends that the statute of limitations began to run on June 30, 1998, and therefore her complaint on June 21, 1999, was timely. Breen argues that Appellant discovered the alleged negligent act as early as 1992, and that she suffered non-speculative damages no later than July 1, 1997, more than one year before she filed her complaint against him.

The provisions of KRS 413.245, the controlling statute, are as follows:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others *shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered* by the party injured. Time shall not commence against a party under legal disability until removal of the disability. (emphasis added).

Construing this statute, this Court has recognized two possible dates upon which the statute of limitations begins to run. The first is the date of the occurrence, and the second is the date of discovery, if it is later in time.[1]

A professional negligence claim does not accrue until there has been a negligent act and until reasonably ascertainable damages are incurred.[2] When professional negligence occurs during the course of formal litigation, we have held that the injury becomes definite and non-speculative when the underlying case is final.[3] Until the underlying case is final and non-appealable, the statute of limitations is tolled because no cognizable claim has yet accrued.[4]

In *Alagia, Day, Trautwein & Smith v. Broadbent,*[5] an attorney was sued for malpractice for incorrectly advising of the tax consequences of *inter vivos* land transfers that eventually resulted in a substantial tax assessment.[6] This Court held that the statute of limitations did not run while there was an ongoing attorney-client relationship,[7] and we held that the injury did not become fixed and non-speculative until the ongoing negotiations with the IRS were concluded and a final settlement of the tax claim reached.[8] We reasoned that until then a party could not measure damages attributable to the negligent conduct.[9] "Thus, the client's knowledge or

---

1. *Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121 (Ky.1994).

2. *See Faris v. Stone,* 103 S.W.3d 1, 5 (Ky. 2003).

3. *Id.; Hibbard v. Taylor,* 837 S.W.2d 500 (Ky. 1992) (holding damages from underlying cause of action became fixed and non-speculative on the date the Kentucky Supreme Court denied discretionary review).

4. *See Barker v. Miller,* 918 S.W.2d 749, 751 (Ky.App.1996).

5. 882 S.W.2d at 126.

6. *Id.*

7. *See generally id.* (discussing the "continuous representation" rule).

8. *Id.*

9. *See Saylor v. Hall,* 497 S.W.2d 218 (Ky. 1973).

imputed knowledge of a potential malpractice claim was not decisive until there was a final adverse determination of the underlying claim."[10]

█ In the present case, Breen's alleged negligence occurred during August or September of 1992. Although the alleged loss of the records may have prevented Appellant from qualifying for the MDL class action, damages at that time were merely speculative and measurable only by the cost of attempting to reconstruct her medical records so that the breast implant case could proceed. While the reconstruction of the medical records was necessary for Appellant to proceed and costs were incurred, there was no accounting for the value of the underlying case because it was ongoing. In other words, the cost of the records did not include the compensation Appellant claims to have lost because she failed to qualify for the MDL class action by timely production of her original medical records. Not until Appellant reached a non-MDL settlement with 3M on June 30, 1998, was she able to ascertain the damage sustained. As in *Alagia, Day, Trautwein & Smith* and other precedent, Appellant's damages did not become fixed until the date of her settlement in the underlying case for which she had sought representation. Thus, Appellant's claim for damages arising out of her inability to participate in the MDL class action was timely, but her claims for costs associated with identification of the implant manufacturer and costs associated with reconstruction of the original medical records are barred unless Appellant is successful on her claim for damages arising out of her denial of participation in the MDL class action litigation. Breen's Motion for Summary Judg-

ment was not ruled upon by the trial court, and on remand that motion will be before the court.

This case well illustrates the desirability of strictly construing the occurrence rule and requiring that all tort elements be fully developed. As in *Alagia, Day, Trautwein & Smith v. Broadbent, Hibbard v. Taylor,*[11] and *Michels v. Sklavos,*[12] sound public policy is best served by allowing parties an opportunity to seek mitigation of damages by pursuit of the underlying claim, and by leaving the professional negligence claim open until the underlying claim is concluded.

For the forgoing reasons, we reverse the Court of Appeals and remand to the trial court for further consistent proceedings.

COOPER, GRAVES, JOHNSTONE, KELLER, and STUMBO, JJ., concurred in the original opinion and WINTERSHEIMER, J., dissented.

COOPER, GRAVES, JOHNSTONE, KELLER, and SCOTT, JJ., concur in the opinion as modified, and WINTERSHEIMER, J., dissents.

---

10.  *Faris,* 103 S.W.3d at 5.

11.  837 S.W.2d 500.

12.  869 S.W.2d 728 (Ky.1994).