MATHERLY LAND SURVEYING, INC., Alva Matherly, Carl Douglas Comer, Appellants/Cross–Appellees

v.

GARDINER PARK DEVELOPMENT, LLC; Gardiner Design and Development, Inc.; and Gregory S. Gardiner D. Sean Nilsen And Woodward Hobson & Fulton, LLP, Appellees/Cross–Appellants.

Nos. 2005–SC–000576–DG, 2006–SC–000163–DG.

Supreme Court of Kentucky.

Aug. 23, 2007.

Robert M. Brooks, Boehl Stopher & Grave, LLP, Louisville, KY, Counsel for Appellants/Cross–Appellees.

F. Larkin Fore, Sarah Megan Fore, Fore, Miller & Schwartz, David B. Blandford, Ackerson & Yann, Elizabeth Ullmer Mendel, Woodward, Hobson & Fulton, LLP, Louisville, KY, Marc A. Lovell, Bowling Green, KY, Counsel for Appellees/Cross–Appellants.

Opinion of the Court by Justice SCOTT.

Appellants, Matherly Land Surveying, Inc. (hereinafter MLS), Alva Matherly, and Carl Douglas Comer, appeal from a Court of Appeals decision holding that the statute of limitations provided in KRS 413.245 does not apply to all of the services they performed for the Appellees, Gardiner Park Development, LLC (hereinafter GPD), Gardiner Design & Development, Inc. (hereinafter GDD), and Gregory S. Gardiner (collectively referred to as the Gardiner Entities). The Court of Appeals' decision reversed the circuit court's ruling which stated that any claims against MLS stemming from the dispute with the Gardiner Entities were time barred by KRS 413.245 because the services in question were performed or overseen by a professional engineer. Woodward, Hobson & Fulton, LLP and D. Sean Nilsen (collectively referred to as WHF) are Cross–Appellees in this suit, having filed a cross motion to present issues relevant to the Gardiner Entities' lawsuit against them for legal malpractice. We now reverse and reinstate the circuit court's decision.

In 1997, MLS entered into a contract with GDD to provide services incidental to the construction of a subdivision in Jefferson County, Kentucky. According to this contract MLS was to provide multiple services for GDD including, but not limited to: laying out the proposed alignment of sanitary sewers and the lift stations, conducing cross-sections, profiles, and rock soundings necessary for design of the roads and sewers, designing the sanitary sewers for the subdivision, designing the internal roads for the subdivision, designing the lift stations for the sewer, and creating the record plat for the subdivision. At the time the contract was entered into, MLS was registered and licensed by the Board of Registration of Professional Engineers and Land Surveyors as a professional engineering firm in Kentucky. Alva Matherly, the owner of MLS, was a professional land surveyor licensed in Kentucky. MLS also employed several professional engineers licensed in Kentucky including Carl Comer who worked on the Gardiner project.

During a deposition, Gregory Gardiner stated that he believed that a professional

engineer would be providing and stamping the construction plans that were created by MLS. He further stated that he believed he had hired MLS to provide professional engineering services in completing the contract and that any of the surveying activities performed were incidental to the engineering activities.

MLS performed work on the project between August 5, 1997, and August 16, 1998. It was during this time that GDD complained that the work performed by MLS was progressing too slowly. In addition, GDD alleged that the work MLS did was incorrect. Several letters were exchanged between the parties in an attempt to work out a favorable solution, but none could be found. On August 16, 1998, MLS stopped performance on the contract. GDD subsequently hired an engineering firm and land surveying firm to complete the project.

In February 1999, the Gardiner Entities hired Cross Appellants, WHF, to represent their interests against MLS. MLS claimed at this time that they had not been paid for the work they completed and the Gardiner Entities wanted compensation for the incomplete work that had to be done by others.

Thus, the parties attempted to enter into mediation in December 1999, but this was cancelled by MLS. Thereafter, MLS's counsel asserted that any future claims filed by the Gardiner Entities against MLS were barred by the one-year professional services statute of limitations in KRS 413.245. The Gardiner Entities fired WHF and hired new counsel.

The Gardiner Entities then filed suit against MLS, Matherly, Comer, and WHF in September 2001 and specifically asked the trial court to determine the applicable statute of limitations for any claims that might be asserted by the Gardiner Entities against MLS. Alternatively, the Gardiner Entities claimed that WHF had breached the duty of care owed to them by potentially allowing the statute of limitations to run on any future claims. Later the Gardiner Entities filed suit against MLS for any damages it sustained due to MLS's breach of contract. The two suits were consolidated in the Jefferson Circuit Court.

In March 2003, MLS filed a motion to dismiss, for a declaration of rights, and for summary judgment. MLS argued in these motions that the one year statute of limitations for professional services under KRS 413.245 applied to all claims made by Gardiner. WHF filed a cross motion for summary judgment arguing that Gardiner's claims were actually for breach of contract and hence the fifteen year statute of limitations provided for in KRS 413.090 was applicable. WHF further argued that land surveyors were not professionals under KRS 413.245, and that even if KRS 413.245 was applicable, the suit was not time barred because the alleged damages were not "fixed and nonspeculative."

On August 27, 2003, the trial court granted summary judgment to MLS and denied WHF's cross motion for summary judgment. The trial court however, did not address whether a land surveyor was a professional under KRS 413.245, but instead concluded that the contract was for engineering services and any land surveying services provided were incidental to the engineering services. In this respect, the trial court held:

> The record appears undisputed that MLS, a professional engineering company, was performing engineering services while undertaking the Gardiner Park project, and that such services were supervised and controlled by Comer, a licensed engineer employed by MLS. Furthermore, it appears that, as a result of the alleged failure by Comer, as supervising engineer, to timely complete

certain aspects of the project, the alleged breach on the part of MLS occurred. As such, it appears that the one-year statute of limitations under KRS 413.245, is applicable.

In addition, the trial court rejected WHF's arguments, including the contention that the damages were not "fixed and nonspeculative." The trial court held that the Gardiner Entities were fully aware of their claims and damages against MLS no later than the attempted mediation in December 1999—and hence the applicable statute of limitations had run.

On appeal, the Court of Appeals entered into a lengthy discussion regarding the scope of professional services under KRS 413.245. It ultimately determined that land surveying was not a professional service. Therefore, the Court of Appeals held that only claims involving engineering services were time barred because of KRS 413.245. For the reasons set forth herein, we reverse the Court of Appeals.

## I. The appropriate statute of limitations was KRS 413.245

The central question in this case is whether or not the Gardiner Entities' claims against MLS fell within the one-year statute of limitations set forth in KRS 413.245. KRS 413.245 states in pertinent part:

Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

Prior cases have recognized that engineering is a professional service under KRS 413.245. *Vandevelde v. Falls City Builders, Inc.*, 744 S.W.2d 432, 433 (Ky. App.1988). *See also Plaza Bottle Shop v. Al Torstrick Insurance Agency, Inc.*, 712 S.W.2d 349, 351 (Ky.App.1986) (stating that engineering is a profession). In *Vandevelde*, the engineer was performing a quantity survey, a forecast that is used to help a builder determine how much material he may need for a job to assist him in forecasting expenses. *Id.* at 432. It is undisputed that a non-professional or lay person could perform a quantity survey, but in *Vandevelde* the appellant wanted and hired a professional engineer to perform the work. *Id.* at 433. The Court of Appeals held that when determining which services are professional and which ones are not, "setting aside those activities or trying to determine which of those activities could be performed by a lay person renders the statute ineffective." *Id.* "Since the appellant is a professional [an engineer] and was performing a duty consistent with his profession, even though it might have been done by a client or another layman, we hold that it is the type of duty envisioned by KRS 413.245." *Id.* We find the reasoning set forth in *Vandevelde* to also be persuasive in this matter.

While it is true that land surveying had not been expressly declared a professional service under KRS 413.245 at the time MLS performed its contract with GDD, land surveying is frequently necessary for the performance of engineering services. *See* KRS 322.010(4)(a)(5) (defining engineering work in part as "the services of a professional engineer who engages in the practice of land surveying incident to the practice of engineering that does not relate to the location or determination of land boundaries.") In this regard, the relationship between engineering and land surveying is similar to the relationship between

paralegals and lawyers and doctors and nurses—both relationships which have been held to be encompassed within the professional services statute of limitations. *See Underhill v. Stephenson,* 756 S.W.2d 459, 460 (Ky.1988) (holding that nursing is a professional service subject to KRS 413.245); *Lapham v. Stewart,* 137 Idaho 582, 51 P.3d 396, 403 (Id.2002) (holding that negligence on the part of a legal secretary is imputed to the supervising attorney and the statute of limitations for professional services applies to both).

In this matter, GDD hired MLS to perform numerous tasks that require the services of a professional engineer. These tasks included designing the sanitary sewers and road system for the subdivision. KRS 322.010(4)(a) ("Engineering shall include ... engineering design and engineering work associated with design/build projects ... engineering works and systems which involve earth materials, water or other liquids, and gases") To complete these engineering tasks, land surveying was required. While some tasks performed by MLS did not necessitate the use of a professional engineer, MLS held itself out as a professional engineering firm and had a professional engineer, Comer, overseeing work on the project—including the land surveying tasks.

■ In addition, there is substantial evidence that the construction documents produced by MLS were to be approved by either Comer or another engineer. Gregory Gardiner in his deposition even stated that he believed the services performed by MLS were engineering by nature and that the surveying services were incidental to the engineering work. While his statements are not dispositive as to the nature of the contract, they show that Gardiner believed MLS was to perform engineering services for his company. Under such circumstances, we believe that both the engineering and land surveying services en-

compassed by the contract are properly classified as professional and thus, are subject to KRS 413.245. *See Vandevelde,* 744 S.W.2d at 433 (holding that since the performer of a task which could be performed by a layperson represented that he was in fact a professional engineer, KRS 413.245 applied).

It is important to note that while this dispute is contractual by nature, it is not governed by KRS 413.090 as WHF has asserted. The express language of KRS 413.245 states "that a civil action, *whether brought in tort or contract,* arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." (emphasis added) In this matter the dispute is regarding MLS's slow performance on the contract, potential errors in the work performed, and the ultimate breach of contract where MLS stopped all performance. Since the breach of contract stems from the performance or lack of performance of professional services, the proper statute of limitations is KRS 413.245.

## II. Gardiner's cause of action has accrued and is time barred

Cross-appellant, WHF asserts that even if the proper statute of limitations is KRS 413.245, the action is not time barred because the action against MLS has not yet accrued. In particular WHF asks this Court to hold that damages would not accrue until the damages are "fixed and nonspeculative." *Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121, 126 (Ky.1994). *See also Meade County Bank v. Wheatley,* 910 S.W.2d 233 (Ky.1995) (holding that damages were not fixed until a bank actually sold certain property and

the deficiency between the price of the house and debt owed was apparent). Such a standard would toll the statute of limitations until it was known with absolute certainty the amount of damages flowing from an incident. WHF argues that this is the correct standard because the damages arising from this case are still unknown— they argue that unknown damages may still occur or the parties may discover that Gardiner suffered no damages at all.

■ WHF misstates the law in this area. Kentucky law has never required a specified dollar amount be known before the statute of limitations can run. *Board of Education of Estill County v. Zurich Insurance*, 180 F.Supp.2d 890, 893 (E.D.Ky.2002) ("... if plaintiff's interpretation is accepted, the limitations period for professional negligence actions would be effectively tolled until damages could be specified as an ascertainable sum certain. This, of course, is not the law.") The statute of limitations begins to run as soon as the injury becomes known to the injured. *Conway v. Huff*, 644 S.W.2d 333 (Ky.1982); *Gill v. Warren*, 751 S.W.2d 33 (Ky.App.1988). *Broadbent, supra,* is distinguishable from this matter because in *Broadbent* there could not be certainty of damages until there was a final adjudication of the legal matter in question to show that there was in fact injury. *Meade County Bank, supra,* is also distinguishable because in that case one could not know if there was an injury until the bank sold a foreclosed house and saw that the debt owed to them was to be unpaid. In this matter, there was a definite point when Gardiner Entities should have known there were going to be damages. *See Old Mason's Home v. Mitchell*, 892 S.W.2d 304, 307–308 (Ky.App.1995) (holding that the statute of limitations in KRS 413.245 is triggered as soon as defects in workmanship are apparent).

■ Potential damages were apparent when MLS walked off the job and certainly apparent when the Gardiner Entities attempted mediation with MLS in December 1999. At this time the Gardiner Entities produced a document which stated all of "Gardiner Design's Known Damages" and drafted a letter which stated that "Only within the last month have all of the problems and deficiencies with MLS's design been uncovered and fixed." It is obvious from the record that the Gardiner Entities were well aware that MLS's actions caused them damages and had a good idea what those damages were in 1999.

Since it appears from the record that the Gardiner Entities knew they had suffered damages as early as December 1999, but did not file suit until September 2001, the applicable statute of limitations expired rendering the suit time barred.

### III. KRS 413.120 does not apply.

WHF's last argument is that the five year statute of limitations for indemnity claims provided in KRS 413.120 is applicable to this matter.[1] WHF cites to *Affholder, Inc. v. Preston Carroll Company*, 27 F.3d 232 (6th Cir.1994), for the proposition that a general contractor has a claim for indemnity against a project engineer who supplied insufficient plans when the general contractor has been found liable to the subcontractor. *Id.* at 234. WHF asserts that this case is applicable because GPD, as an owner, may be owed damages by GDD, the contractor for the subdivision project which was delayed by MLS.

■ However, this action is not and has never proceeded as an indemnity action.

---

1. While WHF did not raise this issue to the Court of Appeals, WHF did present this argument to the trial court.

Indemnity arises where "one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is nevertheless, thereby exposed to liability...." *Nally v. Boop*, 428 S.W.2d 607, 609 (Ky.1968). This case is a consolidated suit where two entities owned by Greg Gardiner are suing MLS directly for malpractice in engineering tasks. For this case to proceed like *Affholder, supra,* one of Gardiner's entities would have to admit liability. or be found liable to the other entity. *Id.* at 234 ("A general contractor does have a claim for indemnity against a construction project's engineers who supplied deficient plans when the general contractor has been found liable or has acknowledged liability to the project's subcontractor for delay costs incurred as a result of deficient plans"). This has not happened in this matter. No where has GDD been found liable or admitted liability to GPD, the owner of the subdivision. Since this matter has not proceeded as an indemnity action, nor could it as it currently proceeds, the statute of limitations under KRS 413.120 is inapplicable.

Accordingly, for all the foregoing reasons, the opinion of the Court of Appeals is reversed and the order of the Jefferson Circuit Court is reinstated.

All sitting. LAMBERT, C.J.; CUNNINGHAM, MINTON, NOBLE and SCHRODER, JJ., concur.