**Bill SAALWAECHTER, Appellant**

v.

**Thomas A. CARROLL and Thomas A. Carroll, P.S.C., Appellees**

NO. 2015-CA-001799-MR

Court of Appeals of Kentucky.

APRIL 7, 2017; 10:00 A.M.

Discretionary Review Denied by Supreme Court August 16, 2017

---

BRIEF FOR APPELLANT: Jasper Dudley Ward IV, Louisville, Ky.

BRIEF FOR APPELLEE: James P. Grohmann, Joseph Charles Klausing, Louisville, Ky.

BEFORE: COMBS, DIXON AND NICKELL, JUDGES.

## OPINION

DIXON, JUDGE:

Appellant, Bill Saalwaechter, appeals from an order of the Daviess Circuit Court granting Appellee, attorney Thomas Carroll's, motion for summary judgment and dismissing Saalwaechter's complaint alleging breach of contract, breach of fiduciary duties and professional negligence arising out the parties' attorney-client relationship. Finding no error, we affirm.

This lawsuit arises from Carroll's representation of Saalwaechter in a transaction beginning in July 2007 involving a pawn shop business and surrounding real estate in Evansville, Indiana. The underlying facts surrounding the business transaction are complicated at best. The 7th Circuit Court of Appeals so noted in attempting to set forth the facts in Saalwaechter's appeal in a collateral case in that court.

The precise terms of the transaction were murky, however. Later, government regulators would have trouble understanding the deal, and some of the particulars remain unclear even on appeal.

As best we can tell, Saalwaechter expected that he would purchase the property and pawn business from the Dukes; lease everything back to a third party, Ryan McDaniel; and eventually, after giving McDaniel time to put together financing, sell to him at a small profit. While they put together financing, McDaniel and the former manager of Fares Loan, Jeremy Kamuf, would continue to operate the shop and make regular payments to Saalwaechter in exchange for the repurchase option. In essence, Saalwaechter would extend a short-term bridge loan to be paid back, with interest, within just a few months.

The plan hit a snag when Kamuf failed to make the required monthly payments. Saalwaechter investigated, only to find out that McDaniel did not know about the deal at all—what Saalwaechter had thought to be McDaniel's guarantee of the loan turned out to be a forgery. Saalwaechter evicted Kamuf from the premises but, without a functioning pawn shop on the property, worried that his real estate investment would quickly lose value.

Saalwaechter therefore decided his best course was to operate the pawn business himself. To his surprise, he discovered that he had never purchased the pawn business or its inventory, just the underlying real estate. It later became clear that Tom Carroll had purchased the Fares Loan assets himself. Carroll had also set up a new company, Evansville Pawn LLC, obtained a pawn license, and retained someone named John Jones to manage it (alongside Kamuf, it seems). Carroll showed Saalwaechter documents describing the deal and containing Saalwaechter's signature, but Saalwaechter claimed that he had never seen them before.

The plot further thickened when [the Indiana Department of financial Institutions "DFI"] received materials indicating that Carroll had procured the Evansville Pawn license on behalf of Kamuf, who was paying Carroll a monthly fee for the business (separate from the fee Kamuf was paying Saalwaechter for the real estate). Such "straw licensing" is prohibited under Indiana law. Ind. Code § 28-7-5-10.5. DFI refused to renew Evansville Pawn's license, and ordered Carroll to wind up his pawn business.

Saalwaechter then decided to create his own entity, Fares Pawn LLC. Just before Evansville Pawn's license was set to expire, Saalwaechter and Carroll agreed that Fares Pawn would take pos-

session of Evansville Pawn's inventory and liquidate its outstanding pawns. Saalwaechter also applied for a pawn license for Fares Pawn. Until DFI approved the application, he planned to operate as a buy/sell business. Unlike a pawnbroker, a buy/sell business does not take the customer's property as collateral for a short-term loan, but instead buys the item outright. This sort of business does not require a license, but it is less lucrative than pawning.

Shortly after Saalwaechter submitted his license application, DFI informed him that, because he had no background in the pawn industry, he would need to find a store manager with two years' experience. Saalwaechter, who had expected to manage the store himself, reluctantly listed the only person he knew with that qualification: John Jones, the manager for Evansville Pawn.

... Months later, while running background checks for Saalwaechter's application, DFI learned that Jones had previously been convicted of a theft- and drug-related felony in Kentucky.... DFI also concluded that Jones had not been forthright with officials when they interviewed Jones and Carroll about Carroll's pawn license application in 2007....

Based on this information, DFI told Saalwaechter that they would not give him a license so long as Jones worked at the pawn shop. Saalwaechter, who earlier had not wanted to hire Jones, now protested. He claimed that he had worked alongside Jones for several months and considered him a good employee. Saalwaechter later met with two members of the DFI staff ... to try to explain the situation, but did not dispel their concerns.

. . . .

1. Kentucky Rules of Civil Procedure.

Saalwaechter soon filed an administrative action challenging the board's denial. This action was dismissed when, after mediation, Saalwaechter agreed to sign [a memorandum of understanding] and commit not to employ Jones. In return, DFI granted him his license [in early 2010], fifteen months after he applied.

*Fares Pawn, LLC v. Indiana Dep't of Fin. Insts.*, 755 F.3d 839, 841-44 (7th Cir. 2014).

In April 2010, Saalwaechter filed a complaint in the Daviess Circuit Court claiming that Carroll, as his attorney, breached his fiduciary duty owed to Saalwaechter, as well as failed "to exercise the degree of care and skill ordinarily and customarily provided by members of the legal profession" under such circumstances. Saalwaechter further alleges that Carroll did not perform his obligations under the terms of their written contract concerning business financing. Saalwaechter claimed that as a result of Carroll's actions he had suffered financial losses, lost profits, and had incurred expenses and suffered harm to his reputation.

In January 2014, the trial court served a CR [1] 77.02 "show cause" notice due to no activity having had occurred in the case in over a year. Saalwaechter did not respond to the notice and the lawsuit was dismissed by order entered on April 14, 2014. On February 2, 2015, Saalwaechter moved to set aside the dismissal. Following a hearing, the trial court denied the motion on March 11, 2015.

On May 11, 2015, Saalwaechter filed a second action against Carroll asserting the same claims based on the same factual predicate as the 2010 action. The sole difference between the 2015 complaint and the 2010 complaint is Saalwaechter's reference to his federal litigation against DFI

stemming from its initial denial of his application for a pawn license.[2] Carroll thereafter filed a motion for summary judgment arguing that Saalwaechter's claims were barred by the one-year statute of limitations set forth in KRS 413.245. By order entered November 3, 2015, the trial court granted summary judgment in favor of Carroll and dismissed Saalwaechter's complaint. In so doing, the trial court noted,

> The plaintiff filed an almost identical Complaint in this court April 26, 2010 which was subsequently dismissed by division II judge Joseph Castlen after delay, inaction and neglect. Now the plaintiff relies upon the reasons for the previous failure to prosecute as a point of law to extend the statue [sic] of limitations for professional negligence for the same actions and occurrences that were the basis of the 2010 action. The factual allegations in the two complaints are identical including the allegation that as a result of actions in 2007 and 2008 by the defendants the plaintiff suffered financial losses.

> In the present action the plaintiff argues the statute of limitations in KRS 423.245 was . . . tolled until the damages caused by the professional negligence were fixed and liquidated and that the damages became fixed and non-speculative July 14th, 2014 when the United States Court of Appeals for the 7th Circuit denied his appeal of an action by the plaintiff against an Indiana regulatory agency.

> . . . .

> The statute requires the occurrence [of professional negligence] and damages. In the case at bar the occurrence

of the plaintiff's causes of action were clearly prior to 2010 as alleged in both complaints with damages occurring as initially alleged and these dates for the representation of the plaintiff by defendants are not disputed by the parties. *Wheatley*, supra, also defined the occurrence of necessary damages delayed the running of the statute of limitations to the time when damages of any amount were certain to accrue. The causes of action in *Broadbent* and *Wheatley* were not delayed because the damage amounts were not fixed; the damages had not yet occurred. The plaintiff's allegations are that he realized that he suffered losses as a result of professional negligence in 2007 and 2008.

Saalwaechter thereafter appealed to this Court as a matter of right. Additional facts are set forth as necessary.

Our standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest v. Scansteel Serv.*

---

**2.** In October 2011, Saalwaechter sued DFI and associated state officials in the Vanderburgh County Superior Court under 42 U.S.C. § 1983; the case was later removed to federal court. He alleged that the defendants had violated his right to equal protection by singling him out for unfair treatment, and sought as damages attorney's fees for the administrative action and lost profits for the time that Fares Pawn continued to operate as a buy/sell business. The district court granted summary judgment to the defendants.

*Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Id.*

Saalwaechter argues in this court that the trial court erred in failing to properly apply the holdings in *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121 (Ky. 1994) and *Meade County Bank v. Wheatley*, 910 S.W.2d 233 (Ky. 1995) to the facts herein. Saalwaechter contends that both cases stand for the proposition that the statute of limitations for legal malpractice and breach of fiduciary duty does not begin to run until damages become "fixed and non-speculative." *Broadbent*, 882 S.W.2d at 126. That is, when "what was merely probable became fact[.]" *Wheatley*, 910 S.W.2d at 235. Accordingly, Saalwaechter contends that, contrary to the trial court's ruling that he suffered losses in 2007 and 2008, his damages did not become fixed and non-speculative until the July 14, 2014, decision of the 7th Circuit Court of Appeals denying his appeal in his lawsuit against the DFI. *Fares Pawn, LLC*, 755 F.3d at 839. We find Saalwaechter's argument unavailing.

The statute of limitations for legal malpractice is set forth in KRS 413.245, which provides:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

Construing KRS 413.245, the Kentucky Supreme Court noted that it encompasses two separate statutes of limitation: the occurrence limitation period and the discovery limitation period. *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007). *See also Pedigo v. Breen*, 169 S.W.3d 831, 833 (Ky. 2004) ("The first is the date of the occurrence, and the second is the date of discovery, if it is later in time."). "Occurrence," as used in KRS 413.245, is synonymous with "cause of action[.]" *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 271 (Ky. App. 2005). "[T]he use of the word 'occurrence' in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute." *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994) (Quoting *Northwestern Nat'l Ins. Co. v. Osborne*, 610 F.Supp. 126, 128 (D.C. Ky. 1985)). The so-called "triggering event" is "the date of 'irrevocable non-speculative injury.'" *Id.* (citation omitted). An "occurrence" legal malpractice claim is ripe, and a cause of action has accrued, when both negligence and "reasonably ascertainable" damages have occurred. *Pedigo*, 169 S.W.3d at 833; *See also Michels*, 869 S.W.2d at 730.

The second or "discovery" limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered. *Id.* at 730. This rule is a codification of the common law discovery rule, *Id.* at 732, and often functions as a "savings" clause or "second bite at the apple" for tolling purposes. *Queensway Fin. Holdings Ltd.* 237 S.W.3d at 148.

There can be no dispute herein that this is an "occurrence" case. The question becomes, then, when did Saalwaechter's

injury occur and his damages become fixed and non-speculative? He argues that, like the scenarios set forth in *Broadbent* and *Wheatley*, although he was injured by Carroll's negligent actions in 2007 and 2008 and actually initiated litigation based on those actions, his damages at that point were merely probable and remained unknown during the time period he was pursuing his claims against DFI stemming from Carroll's actions in the pawn shop transaction. We must disagree.

In *Bd. of Educ. of Estill County, Kentucky v. Zurich Ins. Co.*, 180 F.Supp.2d 890 (E.D. Ky. 2002), the federal district court, interpreting state law, discussed the meaning of "fixed and non-speculative" damages in the context of when the one-year limitations period specified in KRS 413.245 begins to run,

> [P]laintiff overstates the degree to which—under Kentucky law—damages must be defined in professional negligence claims. Whatever it means, "fixed and non-speculative" does not mean that damages, to trigger the initiation of the limitations period, must be translatable into a specified dollar amount. Kentucky law has never required as much and plaintiff points to no authority ... for anything approximating this proposition....
>
> ....
>
> ... [P]laintiff has interpreted "fixed and non-speculative" to be a quantitative requirement—in other words, plaintiff cites this language in support of the proposition that a professional negligence cause of action does not accrue until a would-be plaintiff understands or should reasonably understand the full extent of his damages. Read in context, however, the phrase is more properly interpreted as tolling the limitations period for professional negligence claims until plaintiff is certain that damages

will indeed flow from defendant's negligent act.

*Id.* at 893-94. The district court concluded that if the plaintiff's interpretation of "fixed and non-speculative" was accepted, "the limitations period for professional negligence actions would be effectively tolled until damages could be specified as an ascertainable sum certain. This, of course, is not the law." *Id.* at 893. Our Supreme Court subsequently reached the same conclusion in *Matherly Land Surveying, Inc. v. Gardiner Park Dev.*, 230 S.W.3d 586, 591 (Ky. 2007), in holding that "[s]uch a standard would toll the statute of limitations until it was known with absolute certainty the amount of damages flowing from an incident.... Kentucky law has never required a specified dollar amount be known before the statute of limitations can run."

We are of the opinion that Saalwaechter has misconstrued the effect his federal litigation had upon his legal malpractice claims against Carroll. If this was a legal malpractice claim based on "litigation negligence," our Supreme Court has held "that the injury becomes definite and non-speculative when the underlying case is final" and non-appealable. *Pedigo*, 169 S.W.3d at 833. The premise underlying this rule of finality is that there is a theoretical possibility that the injured party may be "fully restored" by virtue of the appeals process "to the position that he occupied before the negligent act or omission." *Doe*, 173 S.W.3d at 272. In other words, because professional negligence may or may not cause an actual injury, until the final adverse outcome in an *underlying* case happens, a plaintiff has no right to bring an action because there are no certain damages.

However, unlike some of the cases cited by Saalwaechter, there is no litigation negligence, underlying continuing negotiation

or lawsuit in which Carroll was involved. Carroll's conduct upon which Saalwaechter's claims are based occurred in 2007 and 2008. Saalwaechter's subsequent lawsuit against DFI in 2011 for denying him a pawn license was collateral to, and wholly independent of, his action against Carroll. Carroll was not a party to the litigation and was in no manner affected by its outcome. By the very language of Saalwaechter's first complaint in 2010, he was aware that he had been injured by Carroll's alleged negligent conduct. At that point, even if he may not have known of the full extent of his damages in terms of the precise dollar amount, the fact of his injury was certainly "irrevocable" and "non-speculative." Accordingly, we agree with the trial court that Saalwaechter's 2015 complaint was filed outside the one-year statute of limitations set forth in KRS 413.245.

■ Saalwaechter next contends that the trial court erred in finding that his breach of contract claims were subject to the one-year statute of limitations. Saalwaechter argues that breach of contract claims against attorneys, especially those that arise from contracts other than the engagement contract itself and provide non-professional services, are not automatically governed by the legal negligence standard. Saalwaechter points out that his contract with Carroll was not a contract for legal services and the provision Carroll breached did not involve a professional service. As such, Saalwaechter contends that his breach of contract claim is governed by a fifteen-year statute of limitations. See KRS 413.090.

We are of the opinion that Saalwaechter's argument that breaches of contract which are independent of any standard of care issues should not be subject to the professional liability standard is untenable. Kentucky courts have held that it is the existence of a professional performing a task and not the nature of the task itself that brings a claim within KRS 413.245. As observed by a panel of this Court in *Vandevelde v. Falls City Builders, Inc.*, 744 S.W.2d 432, 433 (Ky. App. 1988),

That an activity can be performed by a variety of people can be said for virtually any of the professions. There are things that physicians, attorneys and other professionals do during their regular course of their business that the client or the lay person could perhaps do themselves. The issue is the status of the person performing the particular activity. We believe that setting aside those activities or trying to determine which of those activities could be performed by a lay person, renders the statute ineffective. Clearly the legislature intended to limit actions against professionals for duties performed in the course of their professional activities. Since the appellant is a professional and was performing a duty consistent with his profession, even though it might have been done by a client or another layman, we hold that it is the type of duty envisioned by KRS 413.245.

The trial court herein relied on the *Matherly Land Surveying, Inc.* decision, wherein our Supreme Court applied the reasoning of *Vandevelde* in holding,

It is important to note that while this dispute is contractual by nature, it is not governed by KRS 413.090 as WHF has asserted. The express language of KRS 413.245 states "that a civil action, *whether brought in tort or contract*, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured."

(emphasis added) In this matter the dispute is regarding MLS's slow performance on the contract, potential errors in the work performed, and the ultimate breach of contract where MLS stopped all performance. Since the breach of contract stems from the performance or lack of performance of professional services, the proper statute of limitations is KRS 413.245.

*Matherly Land Surveying, Inc.*, 230 S.W.3d at 590.

While the contract between Saalwaechter and Carroll was not an engagement letter, it nevertheless set forth professional services, albeit some nonlegal, to be performed by Carroll. Saalwaechter's claims regarding Carroll's breach of that contract are based on the very same acts and omissions that underlie his professional negligence claim. Accordingly, we conclude that all of Saalwaechter's claims "arise from" Carroll's "professional services" for purposes of KRS 413.245.

■ Finally, Saalwaechter claims that the trial court erred in not finding that public policy prevented dismissal of his action. Essentially, he is urging this Court to ignore the statute of limitation and remand the case for further litigation on the merits because to do otherwise is "deeply unfair." Saalwaechter argues that Carroll was well aware of the claims against him and any delay in prosecuting this case was due to Saalwaechter's attempting to mitigate his damages in the federal court.

While we agree that mitigating damages is laudable, it simply has nothing to do with the statute of limitations. As we previously noted, the federal litigation did not involve Carroll and the damages Saalwaechter sought therein were for DFI's alleged violation of the Equal Protection Clause of the Fourteenth Amendment. The issues in the two matters were apples and oranges. The trial court properly concluded that Saalwaechter's second complaint was time-barred by KRS 413.245 and dismissal was required.

For the reasons stated therein, we affirm the order of the Daviess Circuit Court granting summary judgment in favor of Appellees.

ALL CONCUR.