NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0105n.06

No. 21-5899

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CASEY RHOADES, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | **FILED** Mar 08, 2022 DEBORAH S. HUNT, Clerk |
| v. | ) ) ) | |
| JOHN TILLEY, Secretary of the Justice and Public Safety Cabinet; JAMES L. ERWIN, Former Commissioner of the Kentucky Department of Corrections, | ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY  OPINION |
| Defendants-Appellees. | ) ) ) | |

Before: McKEAGUE, STRANCH, and BUSH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** At issue in this appeal are Eighth and Fourteenth Amendment claims of over detention brought under 42 U.S.C. § 1983. K.R.S. § 532.400 authorized the Kentucky Department of Corrections to subject certain offenders, like Casey Rhoades, to supervision after they had fully served their sentences or terms of parole. A circuit court declared the statute unconstitutional and permanently enjoined its enforcement, which the Kentucky Court of Appeals upheld. Rhoades was kept in custody for roughly 27 hours after the Court of Appeals ordered the release of the affected inmates. Rhoades brought a deliberate indifference claim in federal court against three Kentucky officials in their personal capacity. The district court granted summary judgment to two defendants and dismissed the third. We **AFFIRM**.

## I.    BACKGROUND

K.R.S. § 532.400 authorized post-incarceration supervision for up to one year for certain offenders after they completed their sentence or parole.  Offenders such as Rhoades, who were classified as "maximum" or "close security," were subject to supervision under the statute.  K.R.S. § 532.400 (1)(b).

In December 2017, Donell Mitchem petitioned for declaratory and injunctive relief in Franklin County Circuit Court challenging the constitutionality of the statute.  *Ky. Dep't of Corr. v. Mitchem*, 586 S.W.3d 256, 258 (Ky. Ct. App. 2019).  In March 2018, the circuit court granted Mitchem's motion for summary judgment, holding that the statute was unconstitutional.  The Department of Corrections appealed.  *Id.* at 257–58.  In April, the circuit court permanently enjoined the Department from holding Mitchem any longer and required that he be released within 48 hours of the entry of the Order.  The Department did not seek to enjoin the circuit court's decision.

Later that summer, the circuit court allowed similarly situated individuals, including Rhoades, to intervene in Mitchem's case.  *Id.* at 258 n.2.  Those individuals moved to permanently enjoin the Department's enforcement of the statute and in September 2018, the court granted the motion and ordered the Department to release the plaintiffs from custody.  At that point, the Department's appeal of the March 2018 Order remained pending.  The Department appealed the September 2018 Order, and the circuit court denied the Department's request to stay the injunction.

The Department then appealed and moved for interlocutory relief from the September 2018 Order.  In October 2018, the Kentucky Court of Appeals denied the motion, holding that the circuit court did not abuse its discretion in issuing the September 2018 Order.  It also ordered that the Department's appeal of the September 2018 Order be held in abeyance pending the final disposition of the Department's appeal of the March 2018 Order.  *Id.*

When the state appellate court's decision was issued on October 31, a case manager notified the relevant parties at 12:23 p.m. At 2:01 p.m. that same day, Justice and Public Safety Cabinet Attorney Allison Brown confirmed with Plaintiffs' attorney that the Department of Corrections had already begun working on identifying and releasing those prisoners being held under the statute. Rhoades was approved for release on November 1, 2018 and notice of that approval was emailed at 4:13 p.m.

Rhoades brought this class action suit under 42 U.S.C § 1983 in March 2019, alleging violation of the inmates' Eighth Amendment and Fourteenth Amendment rights. He also alleged that he was falsely imprisoned. Rhoades sued the following individuals in their individual capacities: John Tilley, the former Secretary of the Justice and Public Safety Cabinet; James Erwin, the former Commissioner of the Kentucky Department of Corrections; and Randy White, the Department of Corrections Deputy Commissioner.

Both Tilley and Erwin moved for summary judgment on all counts against them. Rhoades moved to certify the class. The district court granted both Tilley's and Erwin's motions on all counts. It dismissed White from the case because Rhoades had abandoned his claims against White. The motion to certify the class was denied as moot. Rhoades timely appealed.

## II.   STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021). Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Briggs*, 11 F.4th at 507.

**III.   DISCUSSION**

Rhoades appeals only his federal deliberate indifference claims and the class certification issue.  "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014) (quoting *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)).  There is no dispute that the defendants acted under color of state law.  The federal right at issue is the right of prisoners to be released from state custody upon the completion of their sentences.  *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007).

Both Erwin and Tilley argue that they are entitled qualified immunity.  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The plaintiff "bears the burden of overcoming the qualified immunity defense." *Thompson v. City of Lebanon*, 831 F.3d 366, 369 (6th Cir. 2016).  A plaintiff must show that an official's conduct "(1) violated a constitutional right that (2) was clearly established."  *Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020).  Rhoades argues that his right to be released upon the expiration of his sentence was violated.  We have held that the right to be released when a prisoner's sentence expires is a clearly established right.  *Jones v. Tilley*, 764 F. App'x 447, 449 (6th Cir. 2019).  Thus, the only issue is whether a reasonable juror could conclude that Erwin or Tilley violated Rhoades' constitutional right.  *See id.*

Rhoades alleges that the Defendants were deliberately indifferent to his risk of confinement beyond a valid sentence.  Deliberate indifference, under the Eighth Amendment, is a subjective

standard.[1]  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2004) ("Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.").  The standard "is not mere negligence" because the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 837).  Essentially, the official "must have a 'sufficiently culpable state of mind.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Under this standard, government officials cannot be held liable for the acts of a subordinate under a *respondeat superior* theory; rather, they must have committed an unconstitutional act.  *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).

To determine whether a defendant violated a plaintiff's constitutional rights in the over-detention context, we employ a three-part test:

> To establish § 1983 liability in this context, a plaintiff must [1] first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Shorts*, 255 F. App'x at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)); *Tilley*, 764 F. App'x at 449.  We examine Rhoades' deliberate indifference claim against Erwin and Tilley in turn under this test.

---

[1] The right "not to be detained past the expiration" of a term of incarceration can be analyzed under the Eighth Amendment, Fourteenth Amendment, or both.  *See id.*

**A. Deliberate Indifference Claim Against James Erwin**

The district court concluded that Rhoades failed to satisfy the test because he did not show that Erwin had any knowledge of the post-incarceration statute's litigation or the Kentucky Court of Appeals' October 31, 2019 Order.

We begin our analysis with part 1 of the *Shorts* test, whether Rhoades has shown that Erwin had knowledge of the risk of unwarranted detentions under the statute. Erwin was the Commissioner of the Department of Corrections at the time § 532.400 was being litigated. Erwin testified that he was not aware of Mitchem's lawsuit claiming that the post-incarceration supervision statute was unconstitutional until he was named as a party in Rhoades' federal lawsuit. He also stated that he was "not aware" of the Kentucky Court of Appeals' decision determining that the statute was unconstitutional and granting a permanent injunction. Erwin testified that he was not made aware of any litigation that involved the Department unless he was required to provide a response to the litigation. Erwin reiterated throughout his deposition that he knew nothing about the litigation over the statute. Justice and Public Safety Cabinet Attorney Allison Brown, who was assigned to represent the Department in the statute litigation, confirmed that she had never discussed the litigation with Erwin. Thus, the record does not contain any evidence of Erwin's knowledge.

Rhoades does not dispute Erwin's testimony; instead, he argues that Erwin should be presumed to have knowledge of the suit because Brown, the attorney representing his Department, had knowledge of the litigation. In the deliberate indifference context, we have rejected "imput[ing] knowledge from one defendant to another[,]" and have said that courts must "evaluate each defendant individually[.]" *Greene v. Crawford County*, 22 F.4th 593, 607 (6th Cir. 2022) (alterations in original) (quoting *Speers v. County of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)).

None of the cases that Rhoades cites alters this conclusion because those cases do not involve the standard governing a § 1983 deliberate-indifference claim. *See Daniel v. Cantrell*, 375 F.3d 377, 385–86 (6th Cir. 2004) (affirming the district court's decision to impute the knowledge of an attorney to the plaintiff when determining a statute of limitations issue under 18 U.S.C. § 2710(c)(3)); *see also Michels v. Sklavos*, 869 S.W.2d 728, 731 (Ky. 1994) (examining whether an attorney's knowledge of the negligence of their client's prior counsel could be imputed to the client). Brown's knowledge of the statue's litigation cannot be imputed to Erwin because it is Erwin's personal knowledge that is relevant to the deliberate-indifference analysis. *See Greene*, 22 F.4th at 607.

The record shows that Erwin had no knowledge of Rhoades' problem, *see Shorts*, 255 F. App'x at 55, and Brown's knowledge cannot be imputed to Erwin, *see Greene*, 22 F.4th at 607. Erwin's role, moreover, did not include inmate release functions, such as sentence calculations. On this record, Rhoades does not satisfy part 1 of the test. Thus, no reasonable juror could conclude that Erwin violated Rhoades' constitutional right and Erwin is entitled summary judgment on the deliberate indifference claim.

**B. Deliberate Indifference Claim Against John Tilley**

Although the district court found the issue of Tilley's knowledge to be a "murkier question," the court reasoned that Tilley knew about the statute's litigation at some point between the circuit court's ruling and the Kentucky Court of Appeals' Order. But the district court concluded that Rhoades' deliberate indifference claim failed under the second and third prong of the *Shorts* test.

1.      <u>Knowledge of the Problem</u>

Tilley was familiar with the statute through his work as member of the state legislature, before he became Secretary of the Justice and Public Safety Cabinet. Tilley testified that he was

aware of the litigation about the statute during his time as Secretary and explained what he knew from his time as a state legislator:

> Yeah. I was -- it seemed like it -- actually, there was some litigation that arose prior to my appointment, and I fully expected it. We talked openly in, probably -- if you went back and looked back at open committee meetings, or task force meetings, or implementation meetings, meaning, you know, we met to make sure the bill was being implemented. Afterward, we talked openly about the possibility that it would be eventually struck down as unconstitutional. Again, it was worrisome to me, and many of us talked openly about that.

Tilley also stated that he recalls that the statute being struck down as unconstitutional had come up when he was Secretary:

> Yeah. Yeah. I remember -- and that's why I thought, maybe, when I mentioned it was struck down, I was just recalling – it's not something we devoted a lot of attention to. We had, you know, obviously, hundreds of -- I think, if not, thousands. Just thinking Heather, and Brett, and, you know, Richard would tell me that there may be thousands of cases pending at any given time with the justice cabinet, so -- but -- but it was a -- it was a -- it was a philosophical issue, so it -- it did -- it did make its way into -- to our -- you know, to our meetings, and there was some discussions at one point along the way, yes, and we were not surprised that it was, you know, struck down.

He testified that while he did not recall being updated on the statute litigation, he was aware "of the decision that came down that struck it as unconstitutional." He also received a weekly "legal update" regarding the litigation. Based on Tilley's testimony, a reasonable juror could find that Tilley had knowledge of Rhoades' problem "and thus of the risk that unwarranted punishment was being, or would be, inflicted." *Shorts*, 255 F. App'x at 55. We proceed to parts 2 and 3 of the *Shorts* test.

### 2. Failed to Act or Took Ineffectual Action

The district court ruled that Rhoades failed to show that Tilley "disregarded a known or obvious consequence of his action," *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997), because he did not offer proof of how his over-detention was a known or obvious consequence of Tilley's lack of action.

In *Sample*, the Third Circuit case from which we adopted our deliberate indifference test in the over-detention context, the court explained that the "scope of the official's duties and the role he or she has played in the everyday life of the prison" are relevant to determining whether the prison official was deliberately indifferent. 885 F.2d at 1110. Consider, for instance, that although a warden "may have ultimate responsibility for seeing that prisoners are released when their sentences are served, [he] does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter." *Id.* But, if a prison official has a role or job description that shows that "a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present." *Id.*

Tilley was the Secretary for the Cabinet under which the Department of Corrections falls. But he explained that although the Department is within the Cabinet, he does not oversee the day-to-day activities. He testified that with over 7,000 employees, the large Cabinet has several departments, a number of agencies, and the commissioners that lead the departments. He also noted that the Department of Corrections itself has over 4,000 employees.

As for the specifics of this case, Tilley testified that his role was to oversee the "justice leadership team," and, as Secretary, he had no role in the release of inmates. He also said he had no role in creating the policies that governed how inmates were released—the policies were in place when he became Secretary and it was never brought to his attention as an issue to address. Tilley testified that he was not involved in making sure that individuals were released from prison once the Kentucky Court of Appeals issued its Order. He said, "I think the system was set up – and again, I was not made aware of any issue or any problem with regard to the release of individuals per that ruling or any other, for that matter."

Rhoades argues that "when an official knows about a risk, he must either investigate, ask someone else to investigate, or follow an appropriate administrative procedural to alert someone else to the risk." But the test also takes into account the job of that official. Under part 2 of the *Shorts* test, we analyze the scope of the official's personal duties in determining whether that official was deliberately indifferent to a plaintiff's over detention. The record shows that Tilley's role as head of the Cabinet did not include the release of prisoners. As the applicable cases show, the person or people responsible for Rhoades' over detention had a duty to act, but the record does not show that Tilley was the official with that responsibility. *Compare Short*, 255 F. App'x at 53–55 (holding that the sheriff was not deliberately indifferent where the sheriff was not personally responsible for the plaintiff's imprisonment, but rather the chief jailer was personally responsible), *with Sample*, 885 F.2d at 1110–11 (holding that the defendant was the cause of the plaintiff's over detention where his job description as the "Corrections Records Specialist" included, among other things, computation of inmates' sentences). Tilley had no role in the release of inmates, so Rhoades cannot show that Tilley "either failed to act or took only ineffectual action under circumstances indicating that his . . . response to the problem was a product of deliberate indifference to [Rhoades'] plight." *Short*, 255 F. App'x at 55 (quoting *Sample*, 885 F.2d at 1110). Because the evidence does not show that Tilley was deliberately indifferent, the district court correctly concluded that Tilley was entitled to judgment as a matter of law.

**C. Rhoades' Motion for Class Certification**

Because we have concluded that both Erwin and Tilley are entitled to summary judgment, the district court correctly determined that the motion for class certification was moot.

## IV.   CONCLUSION

Because the district court properly granted summary judgment regarding the deliberate indifference claims against Erwin and Tilley, we **AFFIRM**.